UNITED STATES of America

v.

John HARRIS, Jr., Appellant.

No. 79–2268

United States Court of Appeals,
District of Columbia Circuit.

Argued April 29, 1980.

Decided June 2, 1980.

Rehearing Denied June 23, 1980.

Tomas Lopez, Student Counsel * with whom Michael Geltner, Washington, D. C. (Appointed by this Court), was on brief, for appellant.

Charles W. Brooks, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry, Michael W. Farrell and Roger M. Adelman, Asst. U. S. Attys., Washington, D. C., were on brief, for appellee.

Before WILKEY, WALD and EDWARDS, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

John Harris was convicted of possession with intent to distribute 126 tablets of Valium; possession of a firearm after being convicted of a felony; and possession of a firearm without a license. He has appealed his convictions, contending that the warrantless searches which produced the firearm and the Valium were unlawful. He also contends that the prosecutor's closing argument contained a comment on his failure to take the stand, in violation of the rule laid down in *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). We reject Harris' contention concerning the prosecutor's closing argument and affirm his firearms convictions. Harris raises difficult and complex issues concerning the legality of the search which produced the Valium; since we affirm his other convictions, and since his sentence pursuant to the narcotics conviction was to run concurrent with other valid sentences, we follow the procedure set out in *United States v. Hooper*, 432 F.2d 604 (D.C.Cir.1970), and vacate the judgment on that count, expressing no opinion on the issue.

## I. THE CLOSING ARGUMENT

During his trial, defendant Harris did not take the stand, and offered no evidence on his own behalf. In the course of closing arguments, defense counsel pointed out that no one saw the defendant dealing in drugs and that the van in which both the drugs and the gun were found apparently belonged to his brother. He argued that a conclusion that Harris knew the drugs and the gun were in the car would be speculation. He went on to point out some of the other possible explanations for the defendant's presence at the corner of 12th and U Streets in the District of Columbia, a known center for drug-related activity, at the time of his arrest. On rebuttal, the prosecutor began by protesting that all of the defendant's "explanations" were based on speculation rather than evidence:

Why did he stand up here in the time he has—and he could talk all day if he wanted to—and say to you, "Who might have been driving the van yesterday, who towed the van," so forth and so on, *when there is no evidence in this case one way or the other except the evidence the government has presented*, and when you will be told by the Court that you are not entitled to speculate in this case, to guess, you have to decide it on the evidence—

Transcript at 36–37 (emphasis added). At this point, the trial judge interrupted to remind the prosecutor of his responsibility under *Griffin, supra*, and that the comments were coming "perilously close" to the line of permissible argument. The prosecutor acknowledged the point, and continued his argument:

Who posed the questions? Mr. Alto [the defense counsel]. Mr. Alto posed all these red herrings to you. You have to guess, you have to speculate. I think the defense—I submit to you the defense collapsed right there, right in front of the jury.

Why doesn't Mr. Alto discuss in all the time he has the significance of the syringes, as Mr. Marcum pointed out to you? Why doesn't he tell you what the defendant was doing up there at 12th and U? Why doesn't he offer any other explana-

---

* Entered an appearance as Student Counsel pursuant to Rule 20 of the General Rules of this Court.

tion than the one that the government has advanced to you, that he was up there for the purpose and the intent, as the law says, to distribute these pills of Valium.

Why does he do nothing but yell for a few minutes and ask you to speculate? Because in the face of this evidence, ladies and gentlemen, I submit the defendant through his counsel can do nothing more.

*Id.* at 38.

■ A fundamental corollary of the right to remain silent is that the prosecutor may not use the exercise of that right against the defendant by calling the jury's attention to, and thus inviting it to infer guilt from a failure to take the stand. *Griffin, supra.* The prosecutor need not directly comment on the defendant's silence to violate this rule, so long as the language used, in context, is such that "the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *United States v. Williams*, 521 F.2d 950, 953 (D.C.Cir.1975).

■ This is, admittedly, a narrow path to follow, especially in the heat of argument. In criminal cases, when the defense tactic, as here, is often simply to point out how many other reasonable explanations there may be for the evidence produced by the Government, the line between a legitimate rebuttal of the defense arguments and an indirect comment on the fact that the defendant has not taken the stand is often a very thin one. However, in this case, we conclude after a review of the entire closing argument that the prosecutor's arguments were proper, though as the district judge cautioned, he came "perilously close to commenting on the defendant's silence." The comments did not expressly refer to the defendant's failure to take the stand, and they were offered only in rebuttal to the defense's argument that perhaps there was some other explanation for the defendant's presence on the corner of 12th and U. In this context, pointing out that the defense has offered no evidence to support its argument was not a violation of the *Griffin* principle.

## II. THE SEARCH AND SEIZURE ISSUES

Harris was arrested as a result of an informant's tip that a man matching his description was selling illicit drugs from a red van in the 1900 block of 12th Street, N. W., in the District of Columbia. District police officers arrested and handcuffed Harris at that location, looked through the window of a red van parked alongside Harris, and saw a box labeled "syringes." A police officer entered the unlocked van, seized the box of syringes, and then thoroughly searched the vehicle. The search yielded a hand gun wrapped in a cloth under a seat in the rear of the van, and a manila envelope inside a heater vent underneath the glove box. Inside the envelope were the 126 tablets of Valium on which Harris' narcotics conviction was based.

■ The defendant concedes that his arrest and the seizure of the syringes were legal; the arrest was based on probable cause, and the syringes were in plain view. He argues that the further search of the van, and in particular the seizure and subsequent search of the hidden manila envelope, were not protected by any of the "well-delineated exceptions" to the fourth amendment's mandate that searches be conducted pursuant to a warrant. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967).

We believe that the search of the van falls squarely within the "automobile exception" to the warrant requirement. *See United States v. Hawkins*, 595 F.2d 751 (D.C.Cir.1978). The police had probable cause to believe that Harris was selling drugs out of the van, and that a search of the van would yield incriminating evidence. Given this, an immediate search of the van, even without a warrant, to seize any contraband and prevent the destruction of evidence, has been considered to be proper at least since 1925 when the Supreme Court decided *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Because of their mobility, automobiles on the

public highway carry with them inherent exigent circumstances when it is believed that they contain contraband. Furthermore, the Supreme Court has concluded that a search of an automobile is less intrusive than other searches because one has a lessened expectation of privacy in a vehicle. *See Cardwell v. Lewis,* 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974). The seizure of the firearm from the back of the van thus clearly falls within one of the "well-delineated exceptions" to the warrant requirement.

■ The automobile exception does not answer the further question as to the legality of the additional search of the envelope containing the Valium, a difficult problem raising issues similar to those with which a divided panel of this court recently grappled in *United States v. Ross,* No. 79–1624 (D.C.Cir., April 17, 1980). Harris received a one to three year sentence for his narcotics conviction, to be served concurrent to a one to three year, and a six to eighteen month sentence for his two firearm convictions. Thus, this case seems to us an ideal candidate for the procedure first used by this court in *United States v. Hooper,* 432 F.2d 604 (D.C.Cir.1970), and followed in numerous cases thereafter. See, *United States v. Caldwell,* 543 F.2d 1333, 1367 n.183 (D.C.Cir.1974).

In *Hooper,* the court vacated a conviction and sentence under one count of an indictment where another valid conviction carried with it a sentence which was to run concurrent to the challenged conviction. The court saw "no reason to devote our time and energies to the research, and opinion-writing, incident to appropriate determination of an issue not governed by controlling precedent when no present public interest or need is furthered thereby." *Id.* at 606. In such a case, vacation of the challenged conviction "does not impair any need of the government, avoids the possibility of adverse collateral consequences to the defendant, and furthers the general interest of the administration of justice." *Id.*

We are aware that Harris' one to three year sentence under Count I carried with it an additional one-year special parole term. However, this small difference between the sentence under Count I and those imposed under Counts II and III, when the actual prison term imposed is identical, does not seem to us to be substantial enough to warrant foregoing the numerous benefits of applying *Hooper* in this case. *Cf. United States v. Timmreck,* 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979) (failure to inform defendant of special parole term at time of guilty plea not substantial enough to affect voluntariness of plea absent showing of special prejudice). However, we do note that "the vacation of the judgment does not destroy the jury verdict, but is rather equivalent in practical effect to a suspension of the imposition of sentence. If it later develops that the interest of justice so requires, the sentence can be reimposed on a concurrent basis. The conviction could then be subject to appellate review." *Id.* at 606 n.8. Therefore, if the Government feels that it has a substantial stake in this particular sentence sufficient to overcome the benefits offered by the *Hooper* doctrine, its position can be presented for our consideration.

### III. CONCLUSION

Finding that the search which produced the firearm was lawful and that the closing argument did not violate *Griffin,* we therefore affirm the defendant's conviction for possession of an unregistered firearm, and possession of a firearm after being convicted of a felony. We decline to decide the issues raised concerning the search which produced the Valium, instead vacating the judgment and concurrent sentence imposed pursuant to Count I.

*So ordered.*