UNITED STATES of America

v.

Eric J. MONAGHAN, Appellant.

No. 83–2325.

United States Court of Appeals,
District of Columbia Circuit.

Argued 18 May 1984.
Decided 24 Aug. 1984.

John P. Dwyer, Washington, D.C., with whom James Klein, Washington, D.C., was on the brief, for appellant.

Raymond C. Hurley, Asst. U.S. Atty., Washington, D.C., of the Bar of the District of Columbia Court of Appeals, pro hac vice by special leave of the Court, with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrel, Thomas J. Tourish, Jr. and Theodore A. Shmanda, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before WILKEY and EDWARDS, Circuit Judges, and McGOWAN, Senior Circuit Judge.

WILKEY, Circuit Judge:

The propriety of the prosecutor's closing remarks to the jury, an issue raised not infrequently in appeals, is the question

here. Appellant Monaghan contends that the prosecutor made impermissible references to his decision not to take the witness stand, and that the prosecutor attempted to inflame the passions and prejudices of the jury. We conclude that the statements in question did not infringe appellant's fifth amendment privilege against self-incrimination or due process rights; we therefore affirm the conviction.

## I.

Appellant Eric Monaghan was charged in a six count[1] indictment with various offenses relating to sexual misconduct with 14-year-old Todd Bart. A jury found Monaghan guilty of taking indecent liberties with a minor[2] and committing oral-genital sodomy.[3] He was placed on probation, with special conditions, for three years.

This sordid story begins with a chance encounter between Monaghan and Bart at a gay bar in Washington, D.C., in early September 1982.[4] Bart revealed to appellant that he was a runaway from a juvenile detention facility in Prince William County, Virginia; appellant disclosed to Bart that he was a police officer.[5] Bart agreed to rent a room from appellant for fifty dollars a week, whereupon the two retired to appellant's house on Capitol Hill. The next morning appellant performed oral sex and unsuccessfully attempted anal intercourse with Bart.[6]

Bart stayed with appellant for almost two weeks. Although the pair slept together in appellant's bed, the record discloses no further incidents of sexual misconduct. They spent the weekend of September 10–12 with friends of appellant at a beach in Delaware, where they happened to meet two social workers from Prince William County. When the workers recognized Bart, he informed them that he had "gotten out of detention and [his] parents [had] let [him] come down to the beach for the weekend."[7] On the following Tuesday appellant brought home from work a computer printout showing Bart's status as a juvenile runaway. At appellant's suggestion, they telephoned Monedia Kaufman, Bart's probation officer. Appellant informed Ms. Kaufman that he operated a home for runaways and that Bart was staying there while he went to school.

Two days later Bart left appellant's house. He was subsequently apprehended by FBI agents while boarding a Trailways bus bound for New York. Upon his return to the Prince William County facility, Bart informed Ms. Kaufman of his stay with appellant. She later conveyed the information to an FBI agent. Arrest and a federal grand jury indictment ensued.

1. (1) Transporting a minor within the District of Columbia with intent to engage in prostitution (18 U.S.C. § 2423(a)(1) (1982)); (2) transporting a minor within the District of Columbia, Maryland and Delaware with intent to engage in prostitution (id.); (3) taking indecent liberties with a minor (D.C.CODE ANN. § 22–3501(a) (1981)); (4) enticing a minor with intent to take indecent liberties (id. § 22–3501(b)); (5) committing oral-genital sodomy (id. § 22–3502); and (6) using an interstate facility in aid of the activity of transporting a minor for the purpose of prostitution (18 U.S.C. § 1952(a)(3) (1982)). Record at 1. The sixth count was later dismissed for failure to state an offense. Id. at 39.

2. Count Three. See D.C.CODE ANN. § 22–3501(a) (1981).

3. Count Five. See id. § 22–3502. The jury found appellant not guilty of Counts One and Two. The court instructed the jury to disregard Count Four if it found appellant guilty of Count Three. Record at 48.

4. The exact date was never established. At the time, Bart was fourteen years old, although he carried an identification card which falsely stated that his birthdate was 22 December 1962. Bart earned money by dancing for tips at the bar.

5. Appellant was a detective with the Metro Transit Police Department of the Washington Metropolitan Area Transit Authority at the time of the meeting.

6. Bart apparently feigned sleep during the encounter.

7. Tr. I at 186. "Tr. I" refers to the transcript containing the trial testimony; "Tr. II" refers to the transcript containing the closing arguments of counsel.

In the jury trial presided over by U.S. District Judge Howard F. Corcoran, the government called a number of witnesses, of whom the most important by far was Todd Bart. Cross-examination of Bart was extensive, with defense counsel making repeated attempts to impugn the youth's credibility.[8] The defense called two minor witnesses to the stand, but not appellant.

## II.

Monaghan contends that certain remarks by the prosecutor in his closing statement to the jury constituted impermissible comments on his failure to take the witness stand. We conclude that the remarks were not improper.

■ The fifth amendment protects the right to be free from compelled self-incrimination.[9] A corollary of that right, essential to its effective exercise, is that the government in a criminal proceeding may not adversely comment on an accused's silence.[10]

■ The difficulty for a reviewing court lies in determining whether the prosecutor has strayed beyond the rhetoric permissible in "the heat of argument"[11] and into the realm of the constitutionally infirm. That a prosecutorial statement may in retrospect appear ill-advised or unfortunate does not necessarily render it unconstitutional.[12]

■ Numerous decisions of this and other courts have defined the contours of the constitutional right to be free from adverse prosecutorial comment. A court must determine "whether, in the circumstances of the particular case, 'the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.' "[13]

■ Appellant offers no reason for believing that the prosecutor's statements were "manifestly intended ... to be a comment" on appellant's silence, nor does the record suggest such intent. When assessing the constitutionality of ambiguous prosecutorial remarks, an appellate court should not strain to reach the one interpretation which ascribes improper motives to the prosecutor. The government here was faced with an unenviable task. In order to prevail, it had to establish beyond a reasonable doubt that sexual misconduct had occurred between Monaghan and Bart in the privacy of Monaghan's bedroom, without once alluding to the fact that Monaghan had not taken the witness stand. Under these circumstances, virtually any reference to the illegal act *could* be interpreted as a reflection on appellant's silence. But such a hypertechnical reading of the prosecutor's language is neither mandated nor

---

**8.** For example, the following exchange occurred early in the cross-examination:

Q. Mr. Bart, you're not a very honest person, are you, sir?
A. Why do you say that?
Q. You lie about people alot [sic], don't you, sir?
A. No.
Q. You tell very vicious lies about what people do sexually, don't you, sir?
Tr. I at 199–200.

**9.** U.S. Const. Amend. V.

**10.** *See Griffin v. California,* 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965). Such prosecutorial statements also violate a federal statute, 18 U.S.C. § 3481 (1982). *See Griffin,* 380 U.S. at 612 n. 4, 85 S.Ct. at 1232 n. 4.

**11.** *United States v. Harris,* 627 F.2d 474, 476 (D.C.Cir.), *cert. denied,* 449 U.S. 961, 101 S.Ct. 375, 66 L.Ed.2d 229 (1980).

**12.** *See, e.g., United States v. Rochan,* 563 F.2d 1246, 1250 (5th Cir.1977) ("We do not approve of this language[,] but the question we face is not whether the remark was proper, but whether the jury would necessarily interpret it as a comment on the silence of the accused."); *United States v. Williams,* 521 F.2d 950, 953 (D.C.Cir. 1975) ("Though we find no error, we are not impressed with the prosecutor's conduct in this instance...."); *United States v. Kravitz,* 281 F.2d 581, 586 (3d Cir.1960) ("We think little of the words used by the prosecutor .... But we quite realize ... that some latitude must be given to lawyers' language in a hard fought case."), *cert. denied,* 364 U.S. 941, 81 S.Ct. 459, 5 L.Ed.2d 372 (1961).

**13.** *Williams,* 521 F.2d at 953 (quoting *Knowles v. United States,* 224 F.2d 168, 170 (10th Cir. 1955)); *see Butler v. Rose,* 686 F.2d 1163, 1170 n. 6 (6th Cir.1982) (en banc) (discussing "universal application" of the test).

allowed under the prevailing legal standard for appellate review of prosecutorial comments. Instead, as our decisions establish, we must confine our inquiry to the *intent* of the prosecutor and the *objective effect* the remarks would have had on a *reasonable* juror. Taking into account the unusual circumstances of this case, we consider it much more likely that the prosecutor intended his remarks to be a defense of Bart's credibility than an allusion to appellant's silence.

We turn, then, to the second prong of the test, the effect which the statements "naturally and necessarily" would have had on the jury. This objective standard would clearly have been violated had the prosecutor commented directly on the failure of the appellant to testify. Under such circumstances, a jury might reasonably have construed the comment as an invitation to consider appellant's silence in assessing his guilt or innocence. At most, however, the prosecutor's statements in the present case constituted "only an *indirect* reference to appellant's failure to testify." [14] The likelihood that prejudice occurred is correspondingly diminished.

Even indirect comments can have the proscribed effect on a jury, but we believe that in this case they did not. The most significant of those remarks was the prosecutor's reference, in his closing argument, to the "uncontradicted" character of Todd Bart's testimony:

So, where in the evidence, ladies and gentlemen, is the proof of guilt in this proceeding?

Well, ladies and gentlemen, I would suggest to you first and principally it comes from the testimony, the oral sworn testimony, of Todd Dunning Bart. His evidence is uncontradicted at this

point that he had sex with Eric Monaghan.

Now, when you listen to defense counsel they may argue to you that there, indeed, were contradictions. But listen to their argument carefully. I invite you to do that, please. And, you listen for the part of their argument that directs your attention to any evidence that you have heard or seen that contradicts Todd Bart that he had sex with Eric Monaghan.[15]

If appellant were the only person capable of contradicting Bart's testimony, the jury might logically have construed the prosecutor's statement as an allusion to appellant's silence.[16] But this was not the case. While Bart and Monaghan were the only persons present when the sex acts allegedly occurred, there were other witnesses who could testify as to whether the sexual misconduct in fact took place. Indeed, notwithstanding the prosecutor's characterization of Bart's direct evidence as "uncontradicted," there *was* testimony to the effect that appellant had not had sex with Bart.

Monedia Kaufman testified that, in her first and second conversations with Bart following his return to the detention facility, the youth made no mention of a homosexual encounter with Monaghan. In a subsequent conversation, Bart initially denied having had sex with appellant; only when Kaufman expressed disbelief did Bart concede that "maybe" he and Monaghan had slept together.[17] Moreover, in a statement which he had given to the Public Defender Service, and from which excerpts were read in court, Bart himself recounted telling two of his friends that he had never had sex with appellant.[18] Defense counsel relied on both Kaufman's testimony and the Public Defender statement for the

---

**14.** *Williams,* 521 F.2d at 953 (emphasis added).

**15.** Tr. II at 14.

**16.** *See Raper v. Mintzes,* 706 F.2d 161, 167 (6th Cir.1983) (distinguishing evidence "which could conceivably have been contradicted by witnesses other than the defendant" from evidence which could only have been contradicted by the

defendant). *But cf. Butler v. Rose,* 686 F.2d at 1170–71 (rejecting proposed rule that references to "uncontradicted" state of evidence are always impermissible where defendant is the only person who could have offered such contradiction).

**17.** Tr. I at 64.

**18.** *Id.* at 243–46.

proposition that the alleged sex acts had not occurred.[19] Admittedly, both pieces of testimony were unconvincing in light of the overwhelming evidence against appellant; but this was a question of evidentiary *weight* properly resolved by the jury. The significance of the testimony lies not in its credibility (or lack thereof), but in the fact that witnesses *other* than appellant *could* and *did* contradict Bart's principal testimony.[20]

The prosecutor's statement was proper for another reason. Defense counsel had persistently challenged Bart's veracity on cross-examination, and it was up to the prosecutor to defend the credibility of his star witness. The prosecution cannot be shut off from fair comment on the strength of its own witness's testimony, particularly when it is relying principally on one witness and that witness has been severely challenged by the defense. A reasonable jury would have realized that the prosecutor's remark went to Bart's veracity rather than to appellant's silence.

Appellant contends that other statements by the prosecutor constituted impermissible references to his failure to testify, but we conclude otherwise. At one point in his rebuttal, the prosecutor pointed to appellant and said "[l]adies and gentlemen, one thing for sure. We don't know what your decision will be until you come back into the courtroom and give it to us. But one thing, deep in his heart Mr. Monaghan knows—." [21] A prompt objection by the defense prevented the prosecutor from finishing his sentence. The jury, therefore, never learned what "deep in his heart" the appellant knew. Nor can we usefully attempt to discern the prosecutor's intent in making the statement. The sentence was rendered ambiguous by virtue of the defense counsel's objection. We agree with the government's concession that the remark was "perhaps unnecessary and ill-advised," but we conclude that it did not exceed the limits of the constitutionally permissible. The prosecutor's remarks immediately *following* the interruption were innocuous enough: "One thing we all know, ladies and gentlemen, is that [Monaghan] has gotten and been given a fair, an ultimately fair trial ...." [22] Moreover, at no point did the prosecutor criticize the appellant for failing to impart his knowledge to the jury. Taking all these factors into consideration, we conclude that the statement did not run afoul of the fifth amendment.

Appellant also challenges a remark made by the prosecutor during his closing argument in regard to the corroboration required for the testimony of Bart, a minor. The prosecutor said:

> [W]hen a child takes the stand that child must be treated somewhat differently by you, members of the jury, in assessing the truthfulness and the credibility of the child's testimony. It's just one of the few distinctions that the law makes in the ability of a witness to take the stand and testify; a differentiation between a child, a youth, a minor, and perhaps in *Mr. Monaghan's case* or my case or Mr. Tuttle's case or your case as an adult.[23]

The prosecutor might best have erred on the side of caution by using someone else's name as a means of illustrating the corroboration requirement; but it is significant that appellant's was not the *only* name mentioned. No reasonable juror would have construed the reference to appellant as a reflection on his decision not to testify.

An experienced trial judge heard the same prosecutorial remarks as the jury heard. He was required to be *more* sensitive than the members of the jury to the prejudicial effect statements by the prosecutor might have. In his opinion, the prosecutor's remarks here did not transgress

---

**19.** Tr. II at 42–44.

**20.** For similar reasons, the prosecutor's statement that Bart "can be the only witness," *id.* at 18, did not constitute an impermissible reference to appellant's silence.

**21.** *Id.* at 73.

**22.** *Id.*

**23.** *Id.* at 11–12 (emphasis added).

the limits of proper advocacy, and we see no reason to question that judgment.[24]

### III.

■ Appellant also challenges certain statements made by the prosecutor in his closing argument and rebuttal which, appellant contends, were designed to arouse the passion and prejudice of the jury. We conclude that the statements, even though in some cases improper, did not cause substantial prejudice to the appellant.

■ It is well established that a prosecutor may not make statements calculated to arouse the passions or prejudices of the jury.[25] The prosecutor "may strike hard blows, [but] he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use

every legitimate means to bring about a just one."[26] But in assessing the effect a prosecutor's remark would have had on a jury, due respect must be accorded the jurors' common sense and discrimination. As the Supreme Court stated in *Donnelly v. DeChristoforo:*

> Isolated passages of a prosecutor's argument, billed in advance to the jury as a matter of opinion not of evidence, do not reach the same proportions [as "[t]he 'consistent and repeated misrepresentation' of a dramatic exhibit in evidence"]. Such arguments, like all closing arguments of counsel, are seldom carefully constructed *in toto* before the event; improvisation frequently results in syntax left .imperfect and meaning less than crystal clear. While these general observations in no way justify prosecutorial

---

**24.** Defense counsel requested a jury instruction to "cure" what it considered to be improper prosecutorial comments. Included within that instruction, however, was a personal rebuke of the prosecutor. *See* Record at 50. Judge Corcoran correctly refused the requested instruction. Tr. II at 79. Instead, he offered to give a standard instruction which stated that the defendant had a right not to testify in his own behalf. Defense counsel objected to the instruction on the ground that it would call to the jury's attention the fact that appellant had not testified. *Id.* Judge Corcoran respected defense counsel's decision and did not give the standard instruction. In doing so, he complied with this court's suggestion in *United States v. Williams,* 521 F.2d 950, 955 n. 11 (D.C.Cir.1975), that trial judges respect the tactical decisions of defense counsel. Appellant cannot now complain of the failure to give a curative instruction.

The dilemma of the defendant is always that his failure to testify puts him in an awkward position with the jury. There is no perfect cure that an instruction can effect, but this is one of the handicaps of being a defendant and not taking the witness stand. When a prosecution witness has been severely challenged by the defense, the government must have the opportunity to rehabilitate its witness by logical arguments, certainly among them being that on key points the witness was uncontradicted.

What the appellant argues for here is a perfect solution to the defendant's dilemma, but there probably is none. The instruction on failure to testify is least desirable when there has been no comment which, by the wildest stretch of imagination, could be interpreted as a reflection on the defendant's silence. Then such an instruction coming from the court would raise a red

flag of a type which had not been raised before in the case. However, the standard approved instruction is designed for precisely the type of situation where, as here, there are several remarks which the defendant vigorously argues were comments on his failure to testify. The trial judge in the present case offered to give such an instruction, and it was refused.

**25.** *See Viereck v. United States,* 318 U.S. 236, 63 S.Ct. 561, 87 L.Ed. 734 (1943). *Viereck* involved a wartime prosecution for willful omission of material facts in a registration statement required of agents of foreign principals. The prosecutor made an impassioned appeal to the jurors' sense of patriotism:

> This is war. It is a fight to the death. The American people are relying upon you ladies and gentlemen for their protection against this sort of a crime, just as much as they are relying upon the protection of the men who man the guns in Bataan Peninsula, and everywhere else. They are relying upon you ladies and gentlemen for their protection. We are at war. You have a duty to perform here.
>
> As a representative of your Government I am calling upon every one of you to do your duty.

318 U.S. at 247 n. 3, 63 S.Ct. at 566 n. 3 (quoting prosecutor). The Supreme Court termed the remarks "highly prejudicial." *Id.* at 248, 63 S.Ct. at 566. They constituted "an appeal wholly irrelevant to any facts or issues in the case, the purpose and effect of which could only have been to arouse passion and prejudice." *Id.* at 247, 63 S.Ct. at 566.

**26.** *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935).

misconduct, they do suggest that a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations.[27]

■ One of the challenged statements clearly lay within the range of advocacy permitted the prosecutor. In his closing argument, the prosecutor asked the jury to "issue in this proceeding a public condemnation of Mr. Monaghan for his behavior with respect to Todd Bart by finding him guilty in a public forum by citizens of his own community of guilt beyond a reasonable doubt on each of the five charges."[28] Appellant contends that this statement "in effect enlisted [the jury] in the fight against crime,"[29] thereby diverting the jury from its sole task of determining appellant's guilt or innocence.

■ A prosecutor may not urge jurors to convict a criminal defendant in order to protect community values, preserve civil order, or deter future lawbreaking.[30] The evil lurking in such prosecutorial appeals is that the defendant will be convicted for reasons wholly irrelevant to his own guilt or innocence.[31] Jurors may be persuaded by such appeals to believe that, by convicting a defendant, they will assist in the solution of some pressing social problem. The amelioration of society's woes is far too heavy a burden for the individual criminal defendant to bear.

27. 416 U.S. 637, 646–47, 94 S.Ct. 1868, 1872–73, 40 L.Ed.2d 431 (1974) (quoting *Miller v. Pate*, 386 U.S. 1, 6, 87 S.Ct. 785, 787, 17 L.Ed.2d 690 (1967); *see also United States v. Kravitz*, 281 F.2d 581 (3d Cir.1960), *cert. denied*, 364 U.S. 941, 81 S.Ct. 459, 5 L.Ed.2d 372 (1961):

We think little of the words used by the prosecutor. We think they were unnecessary in an otherwise logical and convincing summation. But we quite realize as we have said before that some latitude must be given to lawyers' language in a hard fought case. To say that this remark would have a prejudicial effect on a jury which had listened throughout a long trial to the unfolding of the testimony is to attribute a stupidity and absence of common sense which is incredible in a federal jury. *Id.* at 586.

28. Tr. II at 28–29.

29. Brief for Appellant at 30.

30. *See, e.g., United States v. Terry*, 702 F.2d 299, 313 (2d Cir.) (improper for prosecutor to make statements regarding "community impact"; community impact instruction by judge harmless error), *cert. denied*, 461 U.S. 931, 103 S.Ct. 2095, 77 L.Ed.2d 304, —— U.S. ——, 104 S.Ct. 482, 78 L.Ed.2d 680 (1983); *United States v. Barlin*, 686 F.2d 81, 93 (2d Cir.1982) (condemning prosecutorial appeal to "do something about the drug traffic in our community"; harmless error); *United States v. Hawkins*, 595 F.2d 751, 754–55 (D.C.Cir.1978) (prosecutor is not at liberty to equate, directly or by innuendo, a guilty verdict to a blow against the drug problem; harmless error), *cert. denied*, 441 U.S. 910, 99 S.Ct. 2005, 60 L.Ed.2d 380 (1979); *United States v. Barker*, 553 F.2d 1013, 1025 (6th Cir.1977) (condemning prosecutor's statement that "if you can't ... find these defendants guilty on this

evidence ... we might as well open all the banks and say, 'Come on and get the money, boys, because we'll never be able to convict them.'"); *United States v. Wiley*, 534 F.2d 659, 665 (6th Cir.) (prosecutor's comment that "if this man goes free you have chalked up one point for the criminal" bordered on reversible error), *cert. denied*, 425 U.S. 995, 96 S.Ct. 2209, 48 L.Ed.2d 819 (1976); *Brown v. United States*, 370 F.2d 242, 246 (D.C.Cir.1966) (condemning prosecutor's statement that, if defendant is not convicted, "this city must have martial law").

Some courts have held that appeals to the jury to act as the "conscience of the community" are not *per se* impermissible unless they are *designed* to inflame the jury. *See United States v. Kopituk*, 690 F.2d 1289, 1342–43 (11th Cir.1982), *cert. denied*, 461 U.S. 928, ——, 103 S.Ct. 2089, 2090, 3542, 77 L.Ed.2d 300, 300, 1391 (1983); *United States v. Lewis*, 547 F.2d 1030, 1037 (8th Cir.1976), *cert. denied*, 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 566 (1977); *cf. United States v. Shirley*, 435 F.2d 1076, 1079 (7th Cir. 1970) (prosecutor's reference to the increasing number of car thefts did not constitute "an emotional appeal to the jurors' self interest designed to arouse their prejudice against the defendant"); *United States v. Alloway*, 397 F.2d 105, 113 (6th Cir.1968) (prosecutor's reference to jury as "world conscience of the community," and request that jury "let the John Alloways know that this type of conduct will not be tolerated," did not exceed permissible bounds of advocacy).

31. As one district court succinctly put it, such appeals encourage the jury to convict a defendant "not only for what he had done but for what other thieves and criminals were doing." *Brown v. Estelle*, 468 F.Supp. 42, 48 (N.D.Tex. 1978), *aff'd per curiam*, 591 F.2d 1207 (5th Cir. 1979).

■ But a request that the jury "condemn" an accused for engaging in illegal activity is not constitutionally infirm, so long as it is not calculated to excite prejudice or passion. Such appeals do not mislead the jury into considering social issues irrelevant to the defendant's own case. *Every* criminal conviction is a "public condemnation" of the person convicted; it informs society, in a highly visible and meaningful fashion, that the defendant has engaged in socially proscribed activity. So long as this nation maintains its commitment to open criminal trials [32] and the free dissemination of information regarding their results, the stigma of "public condemnation" will inevitably attend the determination that a defendant is guilty of the crimes with which he is charged.[33]

On other occasions, however, the prosecutor engaged in the advocacy of exaggeration. In his rebuttal, he implied that the appellant should be held to a higher standard of behavior because he was a police officer:

> He was a detective of almost seven years at the time the incident is [sic] alleged in the indictment took place. I'm not saying convict him on the basis of that fact. But what I am saying to you is when you consider his mental state, his knowledge, his knowlege [sic] that he should have known what he was putting himself into from the very beginning. Because we expect police officers and all people who represent law enforcement to live a life basically, ladies and gentlemen, that's purer that [sic] Caesar's wife if they're to be a good and effective person in that endeavor. They can't—they can't even think about doing the things that this gentleman did.
>
> . . . .
>
> You can consider the fact that he was a police officer in gauging what was his intention and why he should of all people have known better.
>
> . . . .
>
> And, what does [appellant's conduct] say about an individual law enforcement officer, particularly, and his sense of his responsibility to the law and the legal system? [34]

As the government concedes, the reference to appellant as something less than an exemplary police officer was "irrelevant and unnecessary." So, too, we think, was the suggestion that appellant be held to a higher standard of conduct because of his occupation.[35]

■ The prosecutor also sought to elicit sympathy for the victim. He rhetorically asked the jurors, "how will Todd Bart ever, ever find himself? How will he ever give up the street life and, at least, that part of the gay life when adults, such as Mr. Monaghan, are using him, in effect, as—to satisfy their own adult sexual gratification." [36] This remark, too, was improper.[37]

---

**32.** *See Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982) (right of access to criminal trials); *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) (same).

**33.** Of course, prosecutorial statements of the type challenged here are impermissible if they are *designed* to excite the prejudices and passions of the jury. *See United States v. Kopituk,* 690 F.2d at 1342–43; *United States v. Lewis,* 547 F.2d at 1037. We conclude that the prosecutor's request here was not the product of improper motives.

**34.** Tr. II at 60–62, 73.

**35.** It is true, as the government points out, that *defense* counsel first raised the issue of appellant's occupation. Tr. II at 55. It may also be true that the government had legitimate reasons for relying on the same fact: the appellant's status as a police officer may have been relevant to the issue of his knowledge and intent. Finally, it is true that the prosecutor mitigated the prejudicial effect of his remarks somewhat by stating, "You cannot use the fact that he's a police officer to treat him differently and to find him guilty where you might give another citizen the benefit of the doubt." Tr. II at 61. We believe, however, that these factors were insufficient to render proper what were clearly improper remarks. This does not mean that such considerations are irrelevant; their relevance lies in determining whether the improper remarks substantially prejudiced the appellant. *See infra* pp. 1443–1444.

**36.** Tr. II at 72.

**37.** Appellant also contends that the prosecutor sought to elicit sympathy for Bart when he

■ The fact that a prosecutor oversteps the bounds of proper advocacy, however, does not necessarily mean that he thereby violates the due process rights of the accused. In order to rise to constitutional proportions, an improper prosecutorial remark must cause substantial prejudice to the defendant.[38] We conclude that the remarks challenged here did not cause such prejudice.

■ An appellate court should consider three factors in determining whether improper remarks by the prosecutor have substantially prejudiced a defendant's trial: the severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of conviction absent the improper remarks.[39] Here, the improper remarks were " 'minor aberrations in a prolonged trial' " rather than " 'cumulative evidence of a proceeding dominated by passion and prejudice.' "[40] They were confined to the prosecutor's closing remarks,[41] and, at least in some instances, were made in response to earlier statements by the

defense.[42] The trial judge took no steps to correct the improprieties, but this fact is attributable in part to defense counsel's failure to request curative instructions.[43] Instead, statements by the prosecutor himself helped mitigate the effect of his improper remarks.[44] Finally, the evidence against appellant was overwhelming with respect to the two counts for which he was found guilty.[45] It is significant that appellant raises no plea of insufficient evidence on disputed issues of fact in this appeal. The jury's factual findings must be taken as established. Those findings are clearly supported—and, indeed, virtually compelled—by the testimony and evidence adduced at trial.

■ The prosecutor's remarks here went beyond the bounds of approved advocacy, but the prejudice which they engendered was insubstantial or nonexistent. It is highly unlikely that a new trial would result in a different verdict. Under these circumstances, reversal of the original conviction is compelled neither by constitutional mandate nor equitable considerations of justice.[46]

asked the jurors to consider "whether [Bart] was acting like the type of person if you put yourself, God forbid, in his situation, how you would respond when you were asked in a courtroom with a jury, with a judge, with other people that you don't know, to reaccount [sic] those kind of details." Tr. II at 20. This remark was clearly proper: it represented a defense of Bart's credibility and not an appeal for sympathy.

**38.** *United States v. Modica,* 663 F.2d 1173, 1181, 1184 (2d Cir.1981), *cert. denied,* 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982).

**39.** *Id.* at 1181.

**40.** *Id.* (quoting *United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 240, 60 S.Ct. 811, 852, 84 L.Ed. 1129 (1940)).

**41.** *See id.* (prosecutor's offending behavior confined to summation).

**42.** *See id.* (one relevant factor is extent to which statements were made in response to defense contentions). Defense counsel had first raised the issue of appellant's status as a law enforcement officer. Moreover, the prosecutor's sympathetic reference to Bart was made after extensive attacks on Bart's credibility by the defense.

**43.** Nor is the absence of curative instructions dispositive. *See id.* at 1181–82 (although improper prosecutorial remarks went uncorrected, they did not result in substantial prejudice).

**44.** Tr. II at 8, 27–28, 61.

**45.** *See Modica,* 663 F.2d at 1182 (trial record strongly indicated that jury would have found defendant guilty even without improper prosecutorial statements).

A fourth factor which may be relevant in some cases is the extent to which the jury appears to have weighed the evidence in a rational, dispassionate fashion. Here, the jurors requested certain items of evidence during the course of their deliberations. Record at 49. It is unlikely that they would have done so had the prosecutor's remarks inflamed their passions and prejudices. Moreover, the jury found the appellant *innocent* of the two prostitution charges. *Id.* at 48.

**46.** There are better ways of punishing or deterring prosecutorial misconduct than by reversing a conviction which was not the product of substantial prejudice. Trial courts should not hesitate to express their disapproval of improper conduct, even, if need be, by reprimanding or suspending the attorney responsible. *See Modica,* 663 F.2d at 1184–85.

## IV.

None of the prosecutor's remarks constituted impermissible comments on the appellant's failure to testify, and, while certain other remarks were exaggerated and improper, none caused the appellant substantial prejudice. The conviction is therefore

*Affirmed.*

HARRY T. EDWARDS, Circuit Judge, dissenting:

The case against the defendant in this action was at best weak. The prosecution relied almost exclusively on the fragmented, inconsistent and repeatedly impeached testimony of a streetwise child prostitute, who is also a convicted thief and known liar. The prostitute admitted at trial that he acted out of anger in telling his tale about the defendant to the authorities—because he believed the defendant had reported his whereabouts to the police. At the time of the encounter between the prostitute and the defendant, the prostitute was a fugitive from either a psychiatric institute or a detention center. Viewed in this setting, the flimsiness of the case against the defendant is easily discerned.

Trial testimony focused on an obviously private encounter between the prostitute and the defendant, and the jury necessarily looked for testimony from the alleged participants. In this context, the right of a defendant to decline to take the witness stand, a right long guaranteed by the United States Constitution, is especially fragile; a jury might view the decision to remain silent as an admission either that any uncontradicted testimony must be true, or that the defendant has something to hide.

Courts have a role, albeit a limited one, in assuring through the use of instructions that a jury does not unfairly penalize a defendant for a decision to remain silent. For the most part, however, jurors are free to draw whatever conclusions they will from the defendant's silence, and the defendant has no means to know what conclusions jurors have reached, or to challenge them.

In marked contrast, courts have imposed a firm obligation on the prosecution not to exacerbate the problem by highlighting, in any way, the decision of the defendant not to testify. Both the Fifth Amendment and federal statutory law, 18 U.S.C. § 3481 (1982), prohibit comment on the refusal to testify; as the Supreme Court explained in *Griffin v. California,* 380 U.S. 609, 614, 85 S.Ct. 1229, 1232, 14 L.Ed.2d 106 (1965), such comment "is a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly.... What the jury may infer, given no help from the court, is one thing. What it may infer when the court solemnizes the silence of the accused into evidence against him is quite another." Notwithstanding this pronouncement, in this case—in which the credibility of the complaining witness was so crucially at issue—the prosecution *repeatedly* drew the attention of the jurors to the defendant's silence. The result was not only to penalize this defendant for his constitutionally protected choice, but to do so in a case in which this penalty surely influenced the jury's decision-making. Accordingly, I dissent from the majority's decision to uphold the defendant's conviction.

\*   \*   \*   \*   \*   \*

It is well-established that the *Griffin* rule prohibits indirect as well as direct comments on the defendant's failure to testify. As this court has held, "[t]he prosecutor need not directly comment on the defendant's silence to violate [the *Griffin*] rule, so long as the language used, in context, is such that 'the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'"[1] When the error is not harmless beyond a reasonable doubt, *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), the resulting conviction must be reversed. *See United States v. Hastings,*

---

1. *United States v. Harris,* 627 F.2d 474, 476 (D.C. Cir.) (quoting *United States v. Williams,* 521 F.2d 950, 953 (D.C.Cir.1975)), *cert. denied,* 449 U.S. 961, 101 S.Ct. 375, 66 L.Ed.2d 229 (1980).

461 U.S. 499, 510, 103 S.Ct. 1974, 1981, 76 L.Ed.2d 96, 107 (1983) ("The question a reviewing court must ask is this: absent the prosecutor's allusion to the failure of the defense to proffer evidence to rebut the testimony of the victims, is it clear beyond a reasonable doubt that the jury would have returned a verdict of guilty?").

In the present case, of the several alleged examples of improper prosecutorial comment to which the defendant points, at least one might suffice, standing alone, to warrant reversal. Several other circuits, and numerous state courts, have ruled that statements that the testimony of a Government witness is "uncontradicted" or "unrefuted" constitute error, at least *when it is clear that the defendant is the only person who might have provided the missing contradiction.*[2] Such comment, although indirect, has been found to be sufficiently unambiguous that a jury would necessarily take it to be a comment on the defendant's silence, *see United States v. Harris,* 627 F.2d 474, 476 (D.C.Cir.), *cert. denied,* 449 U.S. 961, 101 S.Ct. 375, 66 L.Ed.2d 229 (1980), and therefore to require reversal if not harmless.

The facts of this case are paradigmatic; one could scarcely imagine a case more exemplary of the concerns of the cited courts than the present one, involving a prosecution for sodomy and for taking indecent liberties with a minor prostitute, who is also a convicted thief and an admitted liar. It cannot seriously be asserted that any one other than the defendant could have refuted the prostitute's testimony about their alleged sexual encounters in the defendant's bedroom. Nevertheless, in his closing argument, the prosecutor referred to the testimony of the prostitute and said, "His evidence is uncontradicted at this point that he had sex with Eric Monaghan." Trial Transcript ("Tr.") (Nov. 3, 1983) at 14. The prosecutor continued, "Now, when you listen to defense counsel they may argue to you that there, indeed, were contradictions. But listen to their argument carefully. I invite you to do that, please. And, you listen for the part of their argument that directs your attention to any evidence that you have heard or seen that contradicts Todd Bart that he had sex with Eric Monaghan." *Id.*

Any attorney would recognize this line of closing argument to be persuasive. It focuses the jury's attention on the act of sex between two persons, and on the presence of testimony from one, its absence from the other. By twice mentioning the defendant's name in this context, the prosecutor assured that the jury's attention would shift to the defendant. The cases cited in note 2, *supra*, make it clear that this precise strategy has been found by numerous courts to constitute reversible error. These decisions also recognize that a prosecutor's repeated use of this strategy is even more troublesome.[3] Yet, "[a]lmost as if he had studied [these cases] and learned all the wrong lessons, the prosecutor in the

---

2. *See United States v. Hastings,* 660 F.2d 301 (7th Cir.1981), *rev'd on other grounds,* 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983) (reversing court of appeals for failure to consider whether error was harmless); *Runnels v. Hess,* 653 F.2d 1359, 1362–63 (10th Cir.1981); *United States v. Buege,* 578 F.2d 187 (7th Cir.), *cert. denied,* 439 U.S. 871, 99 S.Ct. 203, 58 L.Ed.2d 183 (1978); *United States v. Thurmond,* 541 F.2d 774 (8th Cir.1976), *cert. denied,* 430 U.S. 933, 97 S.Ct. 1556, 51 L.Ed.2d 778 (1977); *United States v. Flannery,* 451 F.2d 880, 881 (1st Cir.1971); *United States v. Handman,* 447 F.2d 853 (7th Cir. 1971); *Desmond v. United States,* 345 F.2d 225, 226 (1st Cir.1965); *Langford v. United States,* 178 F.2d 48, 55 (9th Cir.1949), *cert. denied,* 339 U.S. 938, 70 S.Ct. 669, 94 L.Ed. 1355 (1950); *see also State v. Still,* 119 Ariz. 549, 582 P.2d 639 (1978) (en banc); *Rowley v. State,* 259 Ind. 209, 285 N.E.2d 646 (1972); *White v. United States,* 248 A.2d 825 (D.C.App.1969); *State v. Morgan,* 444 S.W.2d 490 (Mo.1969); *State v. Hart,* 154 Mont. 310, 462 P.2d 885 (1969); *State v. Sinclair,* 49 N.J. 525, 231 A.2d 565 (1967).

3. *See United States v. Flannery,* 451 F.2d 880, 882 (1st Cir.1971) (prosecution used term "uncontradicted" three times to refer to witness's testimony about private talk with defendant); *Rodriguez-Sandoval v. United States,* 409 F.2d 529, 530–31 (1st Cir.1969) (prosecution repeatedly stated that its version of events was uncontradicted); *People v. Johnson,* 102 Ill. App.3d 122, 57 Ill.Dec. 788, 429 N.E.2d 905 (1981) (repeated references to uncontradicted nature of case impermissibly focused attention on defendant's silence).

trial below repeatedly referred to Mr. Monaghan's failure to testify." Brief for Appellant at 20.

To be sure, several judicial opinions have concluded that a prosecutor's mere reference to uncontradicted testimony, on its own, will not constitute reversible error, whether because such a comment is not itself error, or is harmless error.[4] However, in many instances the courts taper this broad holding into a far narrower one by adding a relevant caveat—*i.e.*, that so long as contradictory testimony is available from witnesses other than the defendant himself, such comment is not reversible error.[5] But some courts have found simply that these comments are not error, without further inquiry,[6] or that the error was harmless in light of the evidence of guilt.[7] Thus, were the case against Mr. Monaghan otherwise a strong one, or had the prosecutor erred only by referring a single time to uncontradicted testimony, these few cases *might* militate against reversal.

In the instant case, however, we have much more—enough, I believe, easily to establish both that there was error and that it was not harmless. First, the Government concedes that the prostitute's testimony that he had sex with Monaghan was contradicted on cross-examination by Bart's prior inconsistent statements. *See* Tr. (Nov. 1, 1983) at 225–227, 233, 235, 236; Brief for Appellee at 26. Therefore, in stating that Bart's testimony was uncontradicted, the prosecutor could *only* have meant that the prostitute's testimony was not refuted by Monaghan's testimony.

Second, the prosecutor made several remarks and at least one gesture that exacerbated his comments about the uncontradicted nature of Bart's testimony, thus highlighting the absence of testimony from Monaghan. In particular, the prosecutor referred to Monaghan by name when explaining to the jury the legal difference between *the testimony* of a child and that of an adult. He explained, "It's just one of the few distinctions that the law makes in the ability of a witness to take the stand and testify; a differentiation between a child, a youth, a minor, and perhaps in Mr. Monaghan's case or my case or Mr. Tuttle's case or your case as an adult." Tr. (Nov. 3, 1983) at 11–12. Similarly, in his rebuttal, the prosecutor pointed to Monaghan and stated that there is one thing that "deep in his heart Mr. Monaghan knows ...." *Id.* at 73. Defense counsel objected, interrupting the prosecutor, and the judge sustained the objection. *Id.* Regardless of what was to follow, the remark, coupled with all others, surely left the jury thinking that *whatever* Monaghan knew in his heart, he was not sharing it.

Third, *immediately after* the District judge cautioned the prosecutor to be "a little bit careful," *id.* at 17, about making comments that might highlight the fact that Monaghan failed to testify, the prosecutor said that "by the very nature of the offense," Bart "can be the only witness." *Id.* at 18.

Taken together, the offensive comments and gesture aggravated the prosecutor's initial error, reinforced the negative inference to be drawn, and assured that the individual comments would neither go unnoticed nor remain harmless.

Finally, the District judge denied defense counsel's proper requests for curative instructions. Under the circumstances of this case, error might nonetheless have been rendered harmless had the judge instructed the jury—preferably when the comments were made, but at least at the

---

**4.** *See, e.g., United States v. Rochan,* 563 F.2d 1246, 1249 n. 3 (5th Cir.1977).

**5.** *See, e.g., United States v. Armedo-Sarmiento,* 545 F.2d 785, 793 (2d Cir.1976), *cert. denied,* 430 U.S. 917, 97 S.Ct. 1330, 51 L.Ed.2d 595 (1977); *United States v. Jennings,* 527 F.2d 862, 871 (5th Cir.1976); *Watts v. United States,* 449 A.2d 308, 312–13 (D.C.1982); *Wright v. United States,* 387 A.2d 582, 584–85 (D.C.1978).

**6.** *See United States v. Estrada de Castillo,* 549 F.2d 583, 584 (9th Cir.1976).

**7.** *See United States v. Buege,* 578 F.2d 187, 189 (7th Cir.), *cert. denied,* 439 U.S. 871, 99 S.Ct. 203, 58 L.Ed.2d 183 (1978).

end of argument—that the prosecutor's remarks on Monaghan's decision not to testify were improper and must be disregarded.[8] The judge need not have given precisely the instruction proposed by defense counsel but should have agreed to give an instruction that went further than the standard instruction.[9]

The prosecution's *repeated* effort to remind the jury that Monaghan had not testified in his own defense places this case well beyond those involving mere references to uncontradicted testimony and, to my mind, requires a finding of error. Numerous courts have recognized that *less egregious* cases have resulted in harmful error, and require reversal, and their opinions persuade me that the same result should follow here. Particularly when, as here, it is not at all clear that the evidence is even sufficient to convict the defendant, and where the chief prosecution witness is a male harlot, convicted thief and known liar, who varies his tale with his mood, repeated comments on the defendant's failure to testify are especially troubling, and dangerous. They unjustifiably suggest to the jury that the complaining witness's testimony, because uncontradicted, is true. Absent a strong and immediate curative instruction, such inferences are likely to be drawn. I therefore am left with little doubt that the jury in this case disproportionately credited the prostitute's testimony—which, it must be recalled, was rife with inconsistencies and apparently was offered under a promise not to prosecute—as a result of the prosecutor's comments on Monaghan's silence. Under such circumstances, I conclude that the error was not harmless,[10] and that this case should be reversed.

---

8. *See Eberhardt v. Bordenkircher,* 605 F.2d 275, 280 (6th Cir.1979) (endorsing the use of this kind of curative instruction); *White v. United States,* 248 A.2d 825, 826 & n. 5 (D.C.App.1969) (holding that " '[t]he judge should have admonished the jury that the statement was improper and to disregard it, and then and there should have instructed them as to the law on the subject' " (citation omitted); observing that in some cases even this procedure might not cure prejudice).

9. The standard instruction informs the jury that a defendant has a right not to testify. As defense counsel observed at oral argument, and as other courts have recognized, this instruction alone is often ineffective, *see United States v. Handman,* 447 F.2d at 855; *White v. United States,* 248 A.2d 825, 826 (D.C.App.1969), and it is more likely to exacerbate the defendant's predicament than to ameliorate it. Accordingly, I believe defense counsel properly and necessarily declined the judge's offer to deliver this instruction alone.

10. *See United States v. Hastings,* 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983); *United States v. Handman,* 447 F.2d at 856 (*Griffin* error not harmless because only one witness's testimony linked the defendant to the crime, and that witness was not "above reproach").