UNITED STATES of America

v.

Nathaniel BROWN.

Crim. No. 85–00179.

United States District Court,
District of Columbia.

Aug. 22, 1985.

John F. Finnegan, Asst. U.S. Atty., Washington, D.C., for prosecution.

Patrick J. Christmas, Washington, D.C., for defense.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

This matter is before the Court on defendant's motion to suppress evidence obtained in a warrantless search of an automobile and of his person. At the hearing on the motion it was established that police officers received information from a reliable informant that an individual known as "Sandman" was bringing heroin into the Kenilworth area of the city for distribution. The source provided a physical description of "Sandman" and stated that he drove a brown Cadillac with D.C. tag 889–429 and usually went to his mother's house at 4402 Quarles Street, N.E. between 8:00 and 9:00 a.m. Police officers knew that Nathaniel Brown was called "Sandman" and on April 22, 1985 they observed the brown Cadillac parked at the Quarles Street address at approximately 8:10 a.m. On April 23, 1985 police officers went again to the Quarles Street address and observed the brown Cadillac arrive, driven by defendant's wife, Carol Brown, with defendant in the passenger seat. The officers approached the automobile.

The events that followed are subject to dispute. The government's version is that the police officers told defendant that they had reason to believe he was bringing narcotics into the area, that defendant voluntarily told the police they could search the car, that Carol Brown also consented to the search and that she handed over the keys to the car. The police searched and in the trunk they discovered a bag containing drug paraphernalia. Defendant was arrested for possession of drug paraphernalia whereupon he claimed that he was having medical problems and was transported by ambulance to the hospital. At the hospital defendant was searched and police discovered 194 packets of heroin on his person.

After the search of the car, police impounded the vehicle. Sometime in the late afternoon of April 23, 1984, defendant's sister, Suncerae Desiree Clarke, signed a consent form authorizing a search of the brown Cadillac.

At the hearing on the motion to suppress, the Court heard testimony from four police officers, the defendant, his wife, and his sister. Defendant disputed the police statements that he granted permission to search the car. He claims that he told the police that they could not search the automobile and his wife stated that she did not consent to the search of the car.

The government seeks to introduce into evidence the packets of heroin discovered on defendant's person and the drug paraphernalia found in the automobile. Defendant objects, claiming that the searches of the automobile and of his person were warrantless searches in violation of the Fourth Amendment.

I

It is clear from the facts of this case that the government did not have probable cause to search the automobile and that therefore this search was not valid under the automobile exception to the warrant requirement. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). Because of the mobility of an automobile and the reduced expectation of privacy therein, police are permitted to search vehicles without a warrant if there is probable cause to believe that the automobile contains articles that the police are entitled to seize. *Chambers v. Maroney, supra; United States v. Whitfield*, 629 F.2d 136 (D.C.Cir.1980); *United States v. Harris*, 627 F.2d 474 (D.C.Cir.1980). In this instance, the information that the police received from their reliable informant states only that the defendant deals drugs and drives this car regularly to his mother's home. There was no indication that the informant knew there was contraband in the car. Neither the informant nor the police had seen any drugs or paraphernalia being placed in the car and there was no probable cause to search the automobile.

The government did not argue that the automobile exception applied in this instance.

The government does argue that defendant lacks standing under the Fourth Amendment to object to the search of the car because he was not the owner of record. The Supreme Court has rejected the concept of automatic standing so that criminal defendants no longer have standing to object to the introduction of evidence obtained in a search and seizure which violated the Fourth Amendment rights of a third party. *Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct. 961, 966, 22 L.Ed.2d 176 (1969). In order to determine whether a defendant has standing to object to the introduction of illegally seized evidence, the Court must now conduct two inquiries: "first, whether the proponent of a particular legal right has asserted 'injury in fact,' and, second, whether the proponent is asserting his own legal rights and interests rather than basing his claim for relief upon the rights of third parties." *Rakas v. Illinois*, 439 U.S. 128, 139, 99 S.Ct. 421, 428, 58 L.Ed.2d 387 (1978). The Court made it clear that the key standard to be applied is whether the defendant had a legitimate expectation of privacy in the invaded place. This legitimate expectation of privacy may arise out of the defendant's ownership or his lawful possession and control of property with the right to exclude others. *Id.* at 143, n. 12, 99 S.Ct. at 430, n. 12. The Court explicitly stated that expectations of privacy need not be based upon a common law interest in real or personal property but that these property concepts are useful in analyzing standing requirements.

■ In this case, the Court has no difficulty concluding that the defendant had a legitimate expectation of privacy in the vehicle and that consequently he has standing to seek exclusion of this evidence. Defendant's sister, Suncerae Clarke, a very credible witness, testified that the defendant was the co-owner of the car, that he had paid $2,000 of the $8,000 down payment, that he had made monthly payments on the car, that the car was normally in his possession, kept at his residence and that he performed repairs and maintenance. She said that she used the automobile occasionally. A copy of the registration, seized at the time of arrest and in police custody from that date, showed Nathaniel Brown listed as an owner for insurance purposes.

Nathaniel Brown gave similar testimony stating that the car was purchased in his sister's name because she had a better credit rating but that he was co-owner. He further stated that he believed he had the right to exclude others from the automobile and that the police could not search it without a warrant.

In response to this evidence, the government argued that Suncerae Clarke is the owner because she previously told the police that she owned the car, record title is in her name alone, and the sales records indicate that the sale was made to her with no mention of her brother's interest.

The Court finds that the defendant was indeed co-owner of the car and that he enjoyed the right to possess, use, and control the vehicle to the exclusion of others such that he had a legitimate expectation of privacy. Common ownership is not unusual in a family situation, and it would be inconceivable to find that only the record owner has a legitimate expectation of privacy in these circumstances. The fact that Suncerae Clarke asserted that she owned the car is not inconsistent with the possibility of co-ownership and it is likely that she was also motivated by her interest in getting the car back from police custody. Based upon all the evidence, particularly the credible testimony of Ms. Clarke, the Court finds that defendant has standing to object to this search and seizure.

■ The final justification for the search of the automobile is the purported consent by defendant and his wife. Officer Colmes testified that the defendant voluntarily told the police to search the car after the police informed him that he was suspected of carrying drugs into the neighborhood. In addition, there was testimony that defendant's wife also consent to the search of the automobile by voluntarily giving the police the keys to the car and telling them how to open the trunk.

A search and seizure conducted pursuant to consent is recognized as one of the exceptions to the warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973). To be valid, the consent must be an intentional relinquishment of a known right. In this case, defendant claims that he knew the police needed a warrant to search the car, he knew there was drug paraphernalia in the trunk of the car and a significant quantity of drugs on his person and he did not consent to any search of the automobile. This is corroborated by defendant's wife who stated that she did not give police permission to search the car and that the police took the keys from her without her consent.

This is clearly a question of the credibility of witnesses. Only one police officer, Officer Colmes, claimed that he had obtained defendant's consent. The other officers were concentrating on different individuals or were too far away to hear the exchange between Colmes and the defendant. In addition, there were a number of inconsistencies between the accounts given by the different officers. In contrast, defendant and his wife both testified emphatically that they did not consent to a search of the car. Defendant's criminal record and his interest in this litigation weigh against his credibility. On the other hand, his undoubted familiarity with the criminal justice system, including the requirement for search warrants, and his knowledge that the drug paraphernalia was in the car, makes it extremely unlikely that he would have volunteered consent to search the car.

The Court finds that defendant did not consent to the search of the automobile [1] and that the police search of the vehicle was therefore an illegal search.

■ It was this illegal search which uncovered the drug paraphernalia thereby giving the police probable cause to arrest the defendant. Thereafter, in a search incident to arrest, the police discovered the heroin on defendant's person. The drug paraphernalia discovered in the first search and the heroin recovered from the later search must both be suppressed as the products of illegal search and seizures by the police.

The exclusionary rule does not operate without cost, as this case demonstrates. In this instance it appears that the defendant may have been engaged in illegal drug trafficking. However, the Fourth Amendment is designed to protect individuals against unreasonable intrusions by the government, and the exclusionary rule is an important tool to deter unconstitutional overreaching by the police. The police cannot be permitted to conduct warrantless searches of citizen's automobiles based upon suspicions falling far short of probable cause. Where they do engage in such conduct, the Court has no choice but to suppress the evidence illegally seized.

For the reasons stated, the motion to suppress is granted, and the articles seized from the automobile and from defendant's person are suppressed.

---

1. The government does have a written consent form signed by Suncerae Clarke authorizing a search of the automobile later that day when it was already in police custody. The circumstances of that consent are ambiguous at best and in any case that later consent cannot be used to justify the earlier search of the vehicle which furnished the probable cause to arrest the defendant.