**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 12 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DARRELL FERGUSON,

      Petitioner-Appellant,

v.

DAVID WILLIAMS, Warden,

      Respondent-Appellee.

No. 97-2240
(D.C. No. 96-127 MV/LFG)
(District of New Mexico)

---

**ORDER AND JUDGMENT** [*]

---

Before **BRORBY** , **EBEL** and **KELLY** , Circuit Judges.

---

This habeas petition under 28 U.S.C. § 2254 (1994), challenging the

incarceration of a New Mexico state prisoner for a rape, kidnap, and burglary

conviction, presents the question of whether a state prosecutor's clearly improper

comments during closing arguments so fundamentally infected the fairness of the

petitioner's trial that the state of New Mexico is constitutionally obliged to give

---

[*]After examining appellant's brief and the appellate record, this panel has
determined unanimously that oral argument would not materially assist the determination
of this appeal. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. The court generally disfavors the citation of orders and judgments;
nevertheless, an order and judgment may be cited under the terms and conditions of 10th
Cir. R. 36.3.

him a new trial. Although we are disturbed by the prosecutor's conduct in this case, we conclude that the petitioner is not entitled, as a matter of constitutional right, to a new trial, and as a result we affirm the district court's dismissal of the petition for a writ of habeas corpus.

## I.

In 1987, Darrell Ferguson, petitioner-appellant, was tried and convicted of three counts of criminal sexual penetration, one count of kidnapping, and one count of aggravated burglary. ( See Doc. #16, Ex. A.) The New Mexico District Court in Quay County sentenced Ferguson to thirty-one years in prison, which included an eight-year sentence enhancement based on Ferguson's prior convictions for burglary. ( See id.)

Ferguson's conviction in this case stemmed from events early in the morning of May 31, 1987, when Ferguson came to the mobile home of Annette Dimas in Tucumcari, New Mexico. ( See Aplt. Br., at 3.) [1] Dimas testified that she discovered Ferguson in the living room of her mobile home, and that he was holding a large knife. She said Ferguson grabbed her by the arm and took her out

---

[1]The appellee's brief in this appeal does not include a statement of the facts. As a result, we must conclude that the appellee does not dispute the factual presentation in the appellant's brief. See Fed. R. App. P. 28(b)(3). Although we presume the appellant's representation of the facts in this case to be accurate, nevertheless, we view the evidence in the light most favorable to the jury's verdict.

to his car, driving to a highway overpass. Dimas tried to talk Ferguson into taking her home, but Ferguson eventually ordered her to remove her clothes. Ferguson then had sexual intercourse with Dimas in the back seat of the car. Subsequently, after a truck with several men had driven by Ferguson's car, Ferguson engaged in fellatio and vaginal intercourse with Dimas.

Dimas testified that she eventually convinced Ferguson that she would not report what happened and that he should bring her home. (_See id._ at 5.) On the drive back to her house, Ferguson's car became stuck in a ditch, and the two worked together to free the car. Dimas testified that at no time during these events did she try to run away from Ferguson or to call out for help because she was afraid of what he might do.

For his own part, Ferguson testified that he had come upon Dimas' mobile home by happenstance, that he originally did not realize the trailer was Dimas' home, and that he intended to break in to steal a video recorder. (_See id._ at 8.) Ferguson claimed that when he realized it was Dimas' home, he knocked on the door and she let him in because they were acquaintances. Ferguson testified that he had given Dimas marijuana in the past, and that they proceeded to smoke marijuana and hashish in Dimas' kitchen that morning. Ferguson claimed that Dimas suggested the two of them go out driving, and while they were driving,

they consumed narcotic mushrooms. Ferguson testified that the three incidents of sexual activity between them were consensual.

During the defense case, Ferguson's attorney called several friends of Dimas, ostensibly to establish that Dimas used drugs and that Dimas had used drugs with Ferguson in the past. ( See id. at 9.) However, these witnesses testified, contrary to Ferguson's own testimony, that they had not seen Dimas use drugs with Ferguson.

During his closing argument, the state's prosecutor made a series of comments to rebut Ferguson's contention that Dimas could have run away or called out for help at various times. The prosecutor argued that Dimas' fear of Ferguson was well-founded in light of the highly publicized recent case of the murder/gang rape of an Albuquerque woman who had been found shot in the head several months prior to Ferguson's trial. [2] In a separate comment during his

---

[2]The prosecutor referred to this case on two separate occasions during his closing argument:

> I think we can add and discuss the fact that along with that, we can look, we can know, news media events, things that happen as close as Albuquerque, some of the horrible crimes involving abduction of females, I guess in my argument to you, that we know she may be lucky to be alive here today.

> Again, I ask you to look at the total situation. Again, for the purpose of illustration, for no other reason, we knowing the news media that people are abducted, sometimes they're killed right along the highway, cars going back and forth, it

(continued...)

- 4 -

rebuttal argument, the prosecutor referred to Ferguson's prior convictions for burglary, saying "Let's see that this doesn't happen again, let's see that there's no more burglaries." ( See id. at 10.) At no time did Ferguson's trial counsel object to any of these statements by the prosecutor.

In his own closing argument, Ferguson's trial counsel made a series of comments suggesting that he was reluctant to argue forcefully in favor of Ferguson and conceding that Ferguson had lied to police about the investigation. [3]

---

[2](...continued)
>doesn't take long to have your throat cut out, it doesn't take
>long to suffer some terrible bodily harm.

(Aplt. Br., at 9.)

Throughout the litigation of Ferguson's post-conviction motions in state and federal court, the appellee has never contradicted Ferguson's contention that these comments by the state prosecutor were intended to refer to the case of Linda Lee Daniels, who was murdered outside Albuquerque in January 1986, or that the jury would interpret these comments as referring to the Daniels case. The facts of Daniels' murder are recounted in State v. Zinn, 746 P.2d 650, 651-52 (N.M. 1987). The record does not establish the exact date of the state trial against Johnny C. Zinn, but the appellant here represents that the publicity surrounding Zinn's trial was prevalent several months before Ferguson's trial. (See Aplt. Br., at 15.)

[3]Ferguson's counsel began his closing argument by saying,
>I want to first say I of all people would prefer that these kinda
>things never happened and we didn't have to go to court. But
>I have an oath, and I undertake to do, to represent people, and
>I will, I will take whatever course it takes to present my
>client's defense because I'm the only one he's got. And
>sometimes I feel like it might be better if lawyers didn't make
>any comments, because you folks have had the opportunity to
>set here and hear the evidence and watch these people, and I
>kinda hope you've made up your mind already from watching
>them. But I have, I'm a human being, you give me a job to do

(continued...)

(See Aplt. Br., at 10.)  Ferguson's trial counsel also conceded that Ferguson's own testimony that he originally intended to steal a video recorder from Dimas indicated that Ferguson was a "very bad boy" who was "thinking bad thoughts." (See Aplt. Br., at 10-11.)

Following Ferguson's trial and conviction, Ferguson's counsel filed a docketing statement for an appeal that raised only a single claim, challenging the sufficiency of the evidence.  (  See Doc. #16, Ex. D.)  However, following Ferguson's dismissal of this private attorney and the appointment of a public defender for his appeal, Ferguson filed an amended docketing statement alleging other inadequacies in his trial, including prosecutorial misconduct and ineffective assistance of counsel.  (  See Doc. #16, Exs. F & H.)

The New Mexico Court of Appeals rejected all of Ferguson's claims in a memorandum opinion.  (  See Doc. #16, Ex. J.)  The court ruled that there was no prosecutorial misconduct in the prosecutor's references in closing argument to the Linda Lee Daniels case because the comments were made in response to arguments from the defendant, and the comments did not compare Ferguson to the defendant in the  Zinn  case, but instead were offered to explain Dimas' state of

---

[3](...continued)
> and I'm going to try to do it, and I have an obligation to do it.
> And in that regard I want to comment to some extent on the
> evidence.  Mr. Ferguson has been a bad boy in the past.

(Aplt. Br., at 10.)

mind. ( See id. at 3.) The court also ruled that there was no prosecutorial misconduct in the prosecutor's appeal to the jury to prevent Ferguson from committing any other burglaries because although the comment was improper, it did not prejudice Ferguson in light of the court's conclusion that the evidence against Ferguson was overwhelming. ( See id. at 4.) The court also concluded there was no ineffective assistance of counsel in the closing argument offered by Ferguson's trial counsel because the comments were necessitated by the attorney's trial strategy of trying to buttress Ferguson's testimony. ( See id. at 5.) Finally, the court concluded that the evidence was sufficient to support Ferguson's conviction. ( See id. at 6.)

Ferguson filed a petition for review in the New Mexico Supreme Court, but his petition was summarily dismissed on August 16, 1991. ( See Doc. #16, Ex. N.) Ferguson filed his first state habeas petition four years later, raising once again his claims of prosecutorial misconduct, ineffective assistance of counsel, and insufficient evidence. ( See Doc. #16, Ex. O.) In addition to the specific allegations raised in his direct appeal, Ferguson also alleged that the prosecutor improperly denied him access to witness statements and investigative reports. (See id. at 6, 7-8.) Ferguson also claimed that the ineffectiveness of his trial counsel included the attorney's failure to interview witnesses prior to trial. ( See id. at 7.)

The New Mexico District Court in Quay County summarily dismissed Ferguson's habeas petition within one week of its filing. (<u>See</u> Doc. #16, Ex. P.) The New Mexico Supreme Court also dismissed without opinion Ferguson's challenge to the denial of his habeas petition. (<u>See</u> Doc. #16, Ex. U.) Ferguson then filed his first federal habeas petition under 28 U.S.C. § 2254 (1994) on January 30, 1996, alleging the same issues that he had raised in his state habeas petition. (<u>See</u> Doc. #1.) The magistrate judge recommended that Ferguson's federal habeas petition be denied, (<u>see</u> Doc. #30), and the district court adopted the magistrate's recommendation in total, without any additional response to the objections filed by Ferguson, (<u>see</u> Doc. #34). Ferguson now appeals that judgment pursuant to 28 U.S.C. § 2253 (1994) and 28 U.S.C. § 1291 (1994). [4]

II.

---

[4]The office of the Attorney General of New Mexico, counsel for appellee, initially declined to file a brief in this case on the grounds that no certificate of appealability had been issued for Ferguson under 28 U.S.C.A. § 2253(c)(1) (West 1997 Supp.). This court, however, issued an order holding that Ferguson's appeal was not subject to the new habeas provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA) because Ferguson filed his habeas petition before the effective date of the AEDPA. <u>See</u> <u>United States v. Kunzman</u>, 125 F.3d 1363, 1364 n.2 (10th Cir. 1997) (footnote circulated en banc). In this order, we issued a certificate of probable cause for Ferguson's appeal and instructed the attorney general's office to submit a brief addressing only the issues of prosecutorial misconduct raised in Ferguson's "Brief-in-Chief."

- 8 -

The most serious allegation Ferguson raises in this appeal is his claim that the prosecutor's misconduct denied him his due process right to a fair trial under the Fourteenth Amendment. Our review of this claim, however, is limited by the procedural posture of this case.

In a federal habeas challenge against a state prosecutor's conduct during a state criminal trial, we may not exercise any supervisory power, but instead, we must confine our review to whether the prosecutor's conduct violated a constitutional right: "Remarks that would cause us to reverse in a direct appeal of a federal conviction are not necessarily grounds for reversal when spoken in state courts." Coleman v. Brown, 802 F.2d 1227, 1237 (10th Cir. 1986); see also Brecheen v. Reynolds, 41 F.3d 1343, 1355 (10th Cir. 1994) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 642 (1974)). As the Supreme Court has indicated, "it is not enough that the prosecutor['s] remarks were undesirable or even universally condemned." Darden v. Wainwright, 477 U.S. 168, 181 (1986), quoted in, Brecheen, 41 F.3d at 1356. Instead, a state habeas petitioner must demonstrate that the prosecutor's misconduct either violated a specific constitutional right or "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Duvall v. Reynolds, 131 F.3d 907, 933 (10th Cir. 1997) (quoting Donnelly, 416 U.S. at 643). In this context, we review the record de novo, evaluating both "the strength of the evidence against

the defendant and . . . whether the prosecutor's statements plausibly 'could have tipped the scales in favor of the prosecution.'" Fero v. Kerby, 39 F.3d 1462, 1473-74 (10th Cir. 1994) (quoting Hopkinson v. Shillinger, 866 F.2d 1185, 1210 (10th Cir. 1989)).

In Ferguson's case, we believe the prosecutor's comments in his closing argument and rebuttal were improper; nevertheless, we must affirm the district court's conclusion that the prosecutor's remarks did not so infect the trial as a whole to render the proceeding fundamentally unfair.

First, the prosecutor's comments concerning the Linda Lee Daniels case were improper because the comments relied on information completely outside the scope of Ferguson's trial and the comments focused the jurors on the gruesome death of a different rape victim involving different assailants using a different modus operandi. It is beyond dispute that a prosecutor "may not make comments calculated to arouse the passions or the prejudices of the jury." United States v. Koon, 34 F.3d 1416, 1443 (9th Cir. 1994), rev'd on other grounds, 518 U.S. 81 (1996). In Ferguson's trial, the prosecutor's comments about the Linda Lee Daniels case were exactly the kind of irrelevant argument whose only purpose could have been to inflame the jury. [5]

---

[5]The appellee argues that the reference to the Linda Lee Daniels case was a permissible response to the defendant's claims that Annette Dimas could have run away

(continued...)

- 10 -

Second, as the magistrate judge found in this case, the prosecutor's rebuttal argument -- asking jurors to convict Ferguson so that he would not commit any more burglaries -- was inappropriate. [6] (See Doc. #30, at 11, ¶ 23.) The prosecutor's appeal to the jury to convict Ferguson so that "there's no more burglaries" was an attempt to obtain a verdict based on the goal of deterring future lawbreaking. Such appeals are generally disapproved because they improperly ask a jury to convict the defendant for future conduct rather than the conduct at issue in the trial. [7] See United States v. Monaghan, 741 F.2d 1434, 1441 (D.C. Cir. 1984). In Monaghan, the court said a prosecutor may not urge jurors to convict a defendant "in order to protect community values, preserve civil

---

[5](...continued)
or called for help. The appellee, however, misses the point. It certainly would have been permissible for the prosecution to suggest that Dimas' conduct was reasonable, and the prosecution would have been well within the confines of proper argument to highlight Dimas' own testimony as to her fear. However, the prosecution crossed the line of permissible argument by asking the jurors to imagine the case of Linda Lee Daniels. Cf. United States v. Koon, 34 F.3d 1416, 1445 (9th Cir. 1994), rev'd on other grounds, 518 U.S. 81 (1996) (noting that a prosecutor's remarks in closing arguments referring to public outrage and media coverage "could easily incite the passions, fears, and prejudices of the jurors, . . . and persuade them to convict the defendants for reasons irrelevant to appellants' guilt").

[6]In Ferguson's direct appeal, the New Mexico Court of Appeals assumed, without deciding the question, that this comment was improper. (See Doc. #16, Ex. J, at 4.)

[7]The Tenth Circuit generally has noted that a prosecutor "may not urge the jury to convict the defendant in order to deter future lawbreaking." See Mahorney v. Wallman, 917 F.2d 469, 473 n.3 (10th Cir. 1990) (citing United States v. Monaghan, 741 F.2d 1434, 1441 (D.C. Cir. 1984).

order, or deter future lawbreaking. The evil lurking in such prosecutorial appeals is that the defendant will be convicted for reasons wholly irrelevant to his own guilt or innocence." Id.

This rule in Monaghan has been applied in cases from other circuits where courts have disapproved of comments that urged jurors to convict a defendant in order to prevent that defendant from committing future crimes. See United States v. Cunningham , 54 F.3d 295, 300 (7th Cir.) (holding that a prosecutor's rebuttal argument was improper when the prosecutor told jurors that the defendants had "believed that nobody was going to stop them because they got away with it. . . . Collectively you can go back there and stop them. You can make sure that [the victim] is not going to get beat up again."), cert. denied , 116 S. Ct. 219 (1995); United States v. Johnson , 968 F.2d 768, 769-70 (8th Cir. 1992) (holding that a prosecutor's remarks were improper when the prosecutor told jurors, "You're the people that stand as a bulwark against the continuation of what [the defendant] is doing on the street, putting this poison on the street."). As the Seventh Circuit explained in Cunningham , the kind of argument presented by the prosecutor in Ferguson's case is improper because "[t]he government may not attempt to obtain a conviction by appealing to jurors to prevent future crimes by finding present guilt." Cunningham , 54 F.3d at 300.

Although both the first and second prosecution arguments in Ferguson's case were improper,[8] we cannot say that they infected the proceedings as a whole because the prosecution's case against Ferguson was relatively strong. The case boiled down to a classic swearing contest between Ferguson and his victim. He said their sexual intercourse was consensual; she said it was not. Ferguson could offer no witnesses to bolster his own version of events. On the other hand, there was testimony that significantly buttressed Dimas' credibility and undercut Ferguson's claims that Dimas had used drugs with him. Thus, it is likely that the jury chose to believe Dimas' version of events because of her own credibility, rather than because of the improper comments of the prosecutor. As a result, we cannot say that the prosecutor's misconduct rendered Ferguson's trial so unfair as to result in a denial of due process.[9]

---

[8]Ferguson contends that there were additional improper comments by the prosecutor in his closing argument when the prosecutor argued that he would have been "terrified" if he had come across a strange man holding a knife in his living room in the middle of the night. (See Aplt. Br., at 13-14; Aplt. Reply Br., at 2-3.) Ferguson contends that these comments constitute "vouching" for the truthfulness of Dimas' testimony that she was afraid of Ferguson. We cannot agree, however, that these comments amount to improper "vouching." These comments merely reflect the prosecutor's attempt to highlight a reasonable inference from the evidence, i.e., that the discovery of an armed man in one's home in the middle of the night would cause a reasonable person to be afraid. As a result, these comments were not improper.

[9]Ferguson raised a second issue of prosecutorial misconduct in his habeas petition, contending that the prosecutor should have provided copies of witness statements and police reports and that the prosecutor should have preserved the preliminary hearing record prior to Ferguson's trial. The magistrate judge, however, found that Ferguson had

(continued...)

- 13 -

Ferguson also has raised four claims of a violation of his Sixth Amendment right to effective assistance of counsel, but in each claim, Ferguson has failed to show either that his trial counsel's conduct fell below an objective standard of reasonableness, or that the conduct prejudiced Ferguson. See Strickland v. Washington, 466 U.S. 668, 687 (1984). We review claims of ineffective assistance of counsel de novo, applying the same standard required of the district court under Strickland. See Duvall v. Reynolds, 131 F.3d 907, 916 (10th Cir. 1997). The Strickland standard requires a habeas petitioner to show first, that "his counsel 'committed serious errors in light of prevailing professional norms' such that his legal representation fell below an objective standard or reasonableness," and second, that "'there is a reasonable probability that the outcome would have been different had those errors not occurred.'" Duvall, 131 F.3d at 916 (quoting United States v. Haddock, 12 F.3d 950, 955 (10th Cir.

---

[9](...continued) waived his right to a preliminary hearing, and thus, there was no record of a preliminary hearing to preserve. (See Doc. #30, at 12.) The magistrate also found that the prosecution disclosed the witness statements and police reports, and Ferguson's trial counsel relied on this information in his questions during the trial. (See id.) On appeal now, Ferguson has provided no support from the record to demonstrate that these factual findings were erroneous, and we have been unable to find any in our de novo review of the record. As a result, there is no basis for this contention of prosecutorial misconduct.

1993)).  On the first element, a habeas petitioner has the burden of overcoming "a strong presumption" that his counsel's conduct was reasonable.        See id.

Ferguson's most serious allegation of ineffective assistance of counsel is his claim that his trial counsel failed to interview a series of defense witnesses before putting them on the stand, and as a consequence, these witnesses gave testimony that corroborated Dimas' version of events and impeached Ferguson's credibility. [10]   Ferguson, however, has presented no evidence suggesting that his trial counsel did indeed fail to interview these witnesses.  Instead, Ferguson offers only the conclusory argument that because the testimony of these witnesses was adverse, then ipso facto, his lawyer must have failed to interview them beforehand.  This kind of argument simply is insufficient to overcome the "strong presumption" of reasonableness that we extend to trial attorneys.        See Duvall, 131 F.3d at 916.  It is entirely possible that Ferguson's trial counsel interviewed these witnesses and put them on the stand -- knowing full well the potential risks of such a strategy -- because he viewed the potential advantages of their testimony as more important.  Merely because these advantages failed to materialize does not

_____

[10]We note that in his federal habeas petition, Ferguson failed to specify exactly which witnesses his trial counsel had not interviewed and how their testimony had harmed his case.  This inadequacy prompted the magistrate judge to reject Ferguson's claim as a conclusory allegation.  (See Doc. #33, at 14, ¶ 29.)  In his Objections to the magistrate's recommendations, however, Ferguson rectified the lack of specificity in his claim, citing four defense witnesses by name.

demonstrate that Ferguson's trial attorney must have been unaware of the risks. As a result, because Ferguson has not raised a sufficient factual allegation that his lawyer ever failed to conduct an investigation, we conclude that there is no predicate to this claim of ineffective assistance of counsel.

Ferguson's next allegation of ineffective assistance involves his trial counsel's closing argument. Ferguson contends that his lawyer's comments indicated that the lawyer was not wholeheartedly committed to his cause. However, we do not believe these comments fell below an objective standard of reasonableness because they were part of trial counsel's strategy. Ferguson himself had admitted to an intent to burglarize Dimas' home and that he had been convicted of burglary in the past. Thus, Ferguson's trial counsel adopted the eminently reasonable tactic of portraying Ferguson as someone who was "bad" but not so bad as to be capable of committing rape and kidnap. Trial counsel's sheepish demeanor at the beginning of his closing argument may well have been an effort to entice the jury into paying attention to what he had to say. Thus, these tactics certainly weren't so bizarre or unwarranted that they fell outside the broad range of reasonable professional assistance that could be considered "sound trial strategy." See Duvall, 131 F.3d at 916.

Ferguson's third claim of ineffective assistance of counsel involves his trial counsel's failure to object the prosecution's improper comments during its closing

- 16 -

argument and rebuttal.  However, in light of our conclusion in Part II,     supra , that Ferguson's right to a fair trial was not impinged by the prosecutor's comments, we cannot conclude that Ferguson was prejudiced by his counsel's failure to object to those comments. [11]

Ferguson's fourth claim of ineffective assistance of counsel involves his trial counsel's filing of a docketing statement in Ferguson's appeal that raised only one issue, sufficiency of the evidence.  Regardless of whether such conduct was unreasonable, the record clearly establishes that Ferguson was not prejudiced by this conduct because Ferguson's new appellate counsel filed a motion to amend his docketing statement to raise new issues, and the New Mexico Court of Appeals granted this motion.  Furthermore, the New Mexico Court of Appeals decided the merits of those additional issues.  Thus, Ferguson has utterly failed to suggest how the outcome of his case would have been different if his trial counsel had included a more complete docketing statement. [12]

---

[11]Ferguson argues that the prejudice arising from his trial counsel's failure to object to the prosecutor's remarks hinges on the New Mexico Court of Appeals's decision to apply a more rigorous standard of review on this issue in his direct appeal.  However, Ferguson has failed to show how the outcome of his direct appeal would have been any different under a less stringent standard of review.

[12]Ferguson contends that his prejudice lies in the "message" communicated by his trial counsel's conduct, i.e., that the New Mexico Court of Appeals could surmise that Ferguson's trial counsel believed Ferguson's appeal was frivolous.  However, the fact that the New Mexico Court of Appeals squarely addressed the legal merits of Ferguson's claims of prosecutorial misconduct and ineffective assistance of counsel demonstrate that

(continued...)

Finally, Ferguson contends that the district court erred in denying him an evidentiary hearing in which he could present evidence to support his claim that his trial counsel failed to make an adequate investigation. [13] However, as discussed above, Ferguson's conclusory allegations about the lack of an investigation have failed to raise a genuine factual dispute as to whether trial counsel did indeed fail to make an investigation. As a result, the district court did not err in refusing to grant Ferguson's request for an evidentiary hearing.

IV.

Ferguson's final issue in this appeal is his claim that there was insufficient evidence to support his conviction because certain conflicts in the testimony raise a reasonable doubt as to whether Ferguson actually used force against Dimas. We review a claim of insufficient evidence de novo, viewing the evidence in the light most favorable to the jury's verdict, and we will not engage in assessments of the

---

[12](...continued)
Ferguson's contention here is baseless.

[13]Ferguson also contends that he was entitled to an evidentiary hearing on his claim that his trial counsel was ineffective for failing to move to suppress the admission of Ferguson's statements to police. However, Ferguson has not raised this particular claim of ineffective assistance in his appeal, and we therefore deem the claim waived. See State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 984 n.7 (10th Cir. 1994) (holding that the failure to raise an issue in an appellant's opening brief waives the issue). As a result, we need not address the question of whether Ferguson was entitled to an evidentiary hearing on the now-waived claim.

credibility of the testimony. See Wingfield v. Massie, 122 F.3d 1329, 1332 (10th Cir. 1997) (noting that on habeas review, we must "'accept the jury's resolution of the evidence as long as it within the bounds of reason'") (quoting Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993)), pet. for cert. filed, 66 U.S.L.W. 3474 (Jan. 8, 1998). In this case, Ferguson's essential complaint focuses on the jury's decision to believe Dimas' testimony rather than his own. However, it is not our role to substitute our view of the evidence for the jury's. Thus, Ferguson's claim cannot prevail.

In conclusion, because we hold that Ferguson has failed to demonstrate any constitutional inadequacy in his trial, we AFFIRM.

The mandate shall issue forthwith.

ENTERED FOR THE COURT


David M. Ebel
Circuit Judge