JOURNAL ENTRY AND OPINION
{¶ 1} In this appeal, defendant-appellant Malika Poole appeals from the judgment entered pursuant to a jury verdict finding her guilty of possession of cocaine in an amount exceeding 1,000 grams, in violation of R.C. 2925.11 and preparation of cocaine for sale in an amount exceeding 1,000 grams, in violation of R.C. 2925.03. Defendant was indicted along with co-defendant, Curtis Bridges. For the reasons that follow, we affirm the trial court's decision.
 {¶ 2} The record presented to us on appeal reveals the following: On May 11, 2001, Patrolman Jack Butcher of the North Olmsted Police Department observed a Cadillac speeding on I-480 in Cuyahoga County, Ohio. Ptl. Butcher signaled the driver of the Cadillac to pull over, and the driver complied. Upon approaching the car, Ptl. Butcher saw Curtis Bridges in the driver's seat and defendant in the passenger seat. Bridges was unable to produce a valid driver's license, but did have an Ohio State identification card. Defendant was also unable to produce either a driver's license or State ID, but did have a work identification card with her name and photograph.
 {¶ 3} Bridges told Ptl. Butcher that they were driving from Chicago, that the Cadillac was a rental, and that his cousin had rented it. He stated that they had been driving through the night and that they had just switched drivers a short time ago. Defendant agreed that she had just been driving and that they had just switched. Neither Bridges nor defendant were able to produce the rental papers.
 {¶ 4} Ptl. Butcher returned to his cruiser to check the vehicle's status and Bridge's driver and warrant status. The check revealed that the license plate on the Cadillac was registered to a 2000 Chevy Malibu. The check also revealed that Bridges had a warrant for his arrest, that his driving status in Ohio was suspended and that defendant's temporary Ohio driver's permit had expired.
 {¶ 5} The dispatch center contacted Ptl. Chris Fox to respond to Ptl. Butcher's location so that they could arrest Bridges on the warrant.
 {¶ 6} Upon Ptl. Fox's arrival, Ptl. Butcher approached Bridges in the Cadillac and advised him of what was happening. Ptl. Butcher removed him from the car, patted him down, and placed him in the back of the cruiser. Ptl. Butcher again asked Bridges who rented the car. This time, Bridges said his sister had rented the car.
 {¶ 7} Ptl. Butcher approached defendant in the passenger side of the vehicle and again asked her for the rental papers. She was still unable to produce them. Ptl. Butcher then advised her that he was going to tow the vehicle. He removed her from the vehicle, checked her for weapons, and placed her in his cruiser.
 {¶ 8} Bridges asked Ptl. Butcher if defendant could drive the car away. Ptl. Butcher said no because there was no valid rental agreement. Ptl. Butcher then informed Bridges and defendant that he would be doing an inventory of the vehicle. The North Olmsted Police Department requires an inventory of all vehicles prior to being towed.
 {¶ 9} Ptl. Butcher and Ptl. Fox performed an inventory of the vehicle. During the inventory, they located defendant's purse on the floor by the front passenger seat and placed it in the front seat of the cruiser. They also discovered a large quantity of cocaine in the trunk.
 {¶ 10} On May 17, 2001, defendant was indicted for one count of possession of cocaine in an amount exceeding 1,000 grams, in violation of R.C. 2925.11 and trafficking in cocaine in an amount exceeding 1,000 grams, in violation of R.C. 2925.03. Both of these counts are felonies of the first degree with mandatory terms of incarceration of ten years. Additionally, each count had a major drug offender's specification which allows the sentencing judge to run an additional one to ten years consecutively on the underlying mandatory ten years. Curtis Bridges was also indicted for his conduct arising out of these events.
 {¶ 11} On May 31, 2001, June 13, 2001, and June 15, 2001, defendant filed motions to suppress in which she maintained that all evidence relating to her arrest for possession and trafficking cocaine should be excluded for the following reasons: lack of probable cause for the initial stop, and the search exceeded the scope of an inventory search.
 {¶ 12} An evidentiary hearing on defendant's motion to suppress was conducted on June 18, 2001. During the hearing, Penelope Wohlgemuth, a counter supervisor for Alamo Rental Car at Cleveland Hopkins Airport, testified that the vehicle driven by Bridges had been rented by a female named Beatrice Hunter. Pursuant to company policy, no one other than Beatrice Hunter was authorized to drive the rented car. Ptl. Butcher also testified that he saw the Cadillac traveling at a greater speed than the posted 60 mph. He testified that he activated his laser gun on the Cadillac and he received a reading of 76 mph. He took a second reading and it was 64 mph. He testified that the driver of the Cadillac slowed down once he saw the cruiser. Ptl. Butcher testified that he did not know the race of the drivers until their car passed him. Ptl. Butcher testified that neither defendant nor co-defendant had a driver's license on their person and that a check revealed that Bridges had a suspended license and an outstanding warrant from South Euclid. He testified that he decided to tow the car because neither party could produce the rental papers for the car. Finally, he testified that he is required to perform an inventory prior to towing a car.
 {¶ 13} On June 21, 2001, the trial court denied defendant's motion to suppress. The trial court found that Ptl. Butcher had probable cause to stop and detain Bridges since he was speeding. The court also found that the inventory search was legal.
 {¶ 14} On July 9, 2001, defendant's jury trial began.[1] At trial, the inventory of defendant's purse, confiscated following her arrest, was introduced into evidence. Included therein were numerous airline ticket stubs and receipts for flights from Cleveland to Chicago and return. Det. Jim Yost of the North Olmsted Police Department testified that in his training and experience, this is indicative of drug trafficking.
 {¶ 15} On July 12, 2001, the jury returned guilty verdicts on both counts. On August 20, 2001, defendant was sentenced to two mandatory ten-year terms for each underlying offense, to be served concurrently, and an additional four-year sentence under the major drug specification, for a total fourteen-year sentence.
 {¶ 16} This appeal timely followed.
 {¶ 17} I. The trial court erred when it denied the defendant's motion to suppress evidence and for the return of illegally seized property.
 {¶ 18} In this first assignment of error, we must determine whether the North Olmsted Police had probable cause to stop and detain the defendant and perform an inventory search of the vehicle.
 {¶ 19} When considering a motion to suppress, the trial court assumes the role of trier-of-fact and is in the best position to resolve factual questions and evaluate the credibility of a witness. State v.Kobi (1997), 122 Ohio App.3d 160. An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Id. Accepting the facts as found by the trial court as true, the appellate court must then independently determine, as a matter of law, without deferring to the trial court's conclusions, whether the facts meet the applicable legal standard. Id.
 {¶ 20} A police officer may stop a vehicle based on probable cause that a traffic violation has occurred. Dayton v. Erickson (1996),76 Ohio St.3d 3.
 {¶ 21} Here, Ptl. Butcher stopped Bridges, the driver of the Cadillac, for a traffic violation, speeding. Thus, we conclude that the stop was lawful.
 {¶ 22} When Ptl. Butcher approached Bridges, following the stop, and asked for his driver's license, he was unable to produce one. When Ptl. Butcher ran Bridge's information into the database and found that there was a warrant for his arrest, Ptl. Butcher was entitled to arrest him, which he did.
 {¶ 23} After arresting Bridges, Ptl. Butcher decided to call for a truck to tow the Cadillac because defendant was unable to produce the rental papers for the car. Under these circumstances, we conclude that Ptl. Butcher's decision to have the Cadillac towed was reasonable.
 {¶ 24} Pursuant to North Olmsted Police policy, Ptl. Butcher conducted an inventory search of the car. Ptl. Butcher testified that the inventory search is done to protect the police department and the individual against allegations of theft. Ptl. Butcher also testified that he is required to search the entire vehicle, including locked areas.
 {¶ 25} Based on Ptl. Butcher's testimony, we conclude that the officer's inventory search of the trunk and the suitcases was in accordance with the policy of the North Olmsted Police Department concerning an inventory search of a car that is going to be towed. We further conclude that the inventory search of the Cadillac was reasonable, for the reasons indicated in Ptl. Butcher's testimony. Specifically, it is reasonable to do an inventory search before surrendering a car to a towing company, in order to make sure that the car's contents are properly accounted for.
 {¶ 26} We conclude that the stop, arrest and search were all reasonable and lawful. Accordingly, the trial court did not err in denying defendant's motion to suppress.
 {¶ 27} Defendant's first assignment of error is overruled.
 {¶ 28} II. The trial court erred when it allowed in over defense objections various airline tickets, speeding tickets, bills and receipts, which were unduly prejudicial to the defense.
 {¶ 29} In her second assignment of error, defendant argues that the trial court should not have allowed the State to introduce the airline tickets, speeding tickets, bills and receipts that were found in her purse. We disagree.
 {¶ 30} Evidence is relevant and admissible if it tends to corroborate evidence of certain but not all elements of a necessary ultimate fact. Fox v. Industrial Commission of Ohio (1955)162 Ohio St. 569; Smith v. Young (1960) 109 Ohio App. 463. The question of whether to admit relevant evidence is within the sound discretion of the trial court. Scott v. Cravaach (1977) 53 Ohio App.2d 248.
 {¶ 31} Here, we find nothing inflammatory or prejudicial about the admission of the disputed evidence. The items were all found in defendant's purse.[2] The airline tickets, stubs, and various receipts were in defendant's name. The items were relevant because they showed that defendant made frequent trips between Cleveland and Chicago. As Det. Yost testified, drug traffickers frequently travel between cities for short periods of time. The items were relevant because they tended to corroborate that defendant actively participated in the transportation of drugs into the community as opposed to merely being present in the car with the co-defendant. The trial court properly exercised its discretion by admitting the evidence.
 {¶ 32} Defendant's second assignment of error is overruled.
 {¶ 33} III. The trial court erred when it permitted Detective Yost to testify about suspected drug activities truly unrelated to the criminal charges.
 {¶ 34} In her third assignment of error, defendant argues that the trial court should not have permitted Det. Yost to testify as an expert witness about drug trafficking. We disagree.
 {¶ 35} Under Evid.R. 702, "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." The determination of whether expert testimony is relevant and will assist the jury is within the discretion of the trial court. State v. Buell (1986),22 Ohio St.3d 124, 133. An abuse of discretion involves more than an error of law or judgment. It implies an unreasonable, arbitrary, unconscionable attitude by the judge. Id.
 {¶ 36} Here, defendant's defense that she was merely a passenger in the vehicle opened the door to allow the State to offer expert testimony describing how drug traffickers transport large amounts of illegal drugs and was probative of defendant's possession and knowledge of the cocaine. See State v. Lyles (1989), 42 Ohio St.3d 98, 100. We cannot conclude that this testimony, describing the ways in which cocaine is transported, how monies from cocaine sales are moved, and modes of transportation used to traffic larger amounts of cocaine, is a matter of common knowledge and would not assist the jury, as defendant maintains.
 {¶ 37} Defendant's third assignment of error is overruled.
 {¶ 38} IV. The trial court erred when it denied the appellant's Rule 29 motion for judgment of acquittal on the charges on the indictment.
 {¶ 39} In her fourth assignment of error, defendant argues that the evidence was insufficient to support her convictions for possession of drugs and preparation of drugs. We disagree.
 {¶ 40} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." To determine whether the evidence before a trial court was sufficient to sustain a conviction, an appellate court must view that evidence in a light most favorable to the prosecution.State v. Dennis (1997), 79 Ohio St.3d 421, 430.
 {¶ 41} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Thompkins
(1997), 78 Ohio St.3d 380, 386.
 {¶ 42} Here, defendant was charged with possession of cocaine and preparation of cocaine. The offense of possession is defined by R.C.2925.11(A), which provides that "no person shall knowingly obtain, possess, or use a controlled substance." The offense of trafficking is defined by R.C. 2925.03, which provides that no person shall knowingly sell or offer to sell a controlled substance.
 {¶ 43} At trial, the State argued that defendant acted in complicity with Curtis Bridges in the drug trafficking charge and had constructive possession of the cocaine. R.C. 2923.03 prohibits complicity with others to commit crimes and provides as follows:
 {¶ 44} (A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 {¶ 45} * * *
 {¶ 46} (2) Aid or abet another in committing the offense:
 {¶ 47} * * *
 {¶ 48} (F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were the principal offender. A charge of complicity may be stated in terms of this section, or in the terms of the principal offense.
 {¶ 49} When viewed in the light most favorable to the State, the record contains sufficient evidence that defendant aided and abetted Curtis Bridges in the trafficking of drugs and had constructive possession of the drugs and the trial court properly denied her motion for judgment of acquittal.
 {¶ 50} A person aids and abets another when she supports, assists, encourages, cooperates with, advises, or incites the principal in the commission of the crime, and shares the criminal intent of the principal. State v. Johnson (2001), 93 Ohio St.3d 240, 245-246. Such intent may be inferred from the circumstances surrounding the crime. Id.
Possession of an item can exist without physical contact so long as a person has dominion and control over it. Such dominion and control without physical custody has been termed constructive, as opposed to actual, possession. State v. Bradley (1971), 26 Ohio App.2d 229, 232.
 {¶ 51} At trial, defendant admitted that she had driven the vehicle containing the ten kilos of cocaine. Speeding tickets, airline stubs and itineraries with defendant's name on them were found in her purse and showed numerous trips back and forth from Chicago to Cleveland for several months prior to her arrest. $3,500, which was separated into three $1,000 bundles and one $500 bundle, was also found in her purse wrapped in small black rubber bands, similar to the rubber bands found in her luggage in the trunk.
 {¶ 52} When this evidence is viewed in the light most favorable to the State, a reasonable jury could find that defendant had constructive possession of the cocaine and did assist co-defendant, Curtis Bridges, in transporting the cocaine into the community. The jury could find that the defendant was not a mere presence as she asserts.
 {¶ 53} After viewing this evidence in a light most favorable to the State, this Court concludes that any rational trier of fact could have found the essential elements of possession and trafficking proven beyond a reasonable doubt. Defendant's arguments to the contrary must fail and the trial court properly denied her motion for judgment of acquittal.
 {¶ 54} Defendant's fourth assignment of error is overruled.
 {¶ 55} V. The trial court erred when it allowed the prosecutor to inquire about prior acts of a defense witness with the sole purpose and design to prejudice the appellant's case.
 {¶ 56} In her fifth assignment of error, defendant argues that the trial court should not have allowed the State to introduce evidence that co-defendant, Curtis Bridges, had $49,000 confiscated from him in LAX Airport in 1996. We disagree.
 {¶ 57} Curtis Bridges, the co-defendant, was a defense witness. During his testimony, Bridges denied transporting or trafficking in cocaine and claimed that he was only bringing in the cocaine this one time as a favor for a friend for $2,000. (Tr. 1041-42). He also testified that he makes his money gambling and earns a maximum of $2,500 per day. (Tr. 1043-45). Following this testimony, the State questioned Bridges about $49,000 that had been body-wrapped to his person and confiscated in the Los Angeles Airport in 1996.
 {¶ 58} Under Evid.R. 405(A), the State may inquire into relevant specific instances of conduct to challenge the credibility of a witness.See State v. Jackson (1991), 57 Ohio St.3d 29; State v. Broom (1988),40 Ohio St.3d 277, 290; State v. Sims (1981), 3 Ohio App.3d 321. Such evidence is admissible, not to establish the truth of the facts, but to test the credibility of the witness, and to ascertain what weight or value is to be given to his testimony. State v. Elliott (1971),25 Ohio St.2d 249 at paragraph two of syllabus.
 {¶ 59} Here, during his testimony, Bridges stated that this was the first time he had ever transported cocaine. He also testified that his source of income is through gambling and that he earns a maximum of $2,500 a day. Clearly, an incident in which $49,000 was body-wrapped to his person and confiscated by the LAX police is inconsistent with his assertion that he has never transported drugs and makes his money, a maximum of $2,500 a day, through gambling. Accordingly, the trial court was within its discretion in permitting this line of inquiry.
 {¶ 60} Defendant's fifth assignment of error is overruled.
 {¶ 61} VI. The trial court erred when it denied the defense's motion for a mistrial when the prosecutor made improper arguments to the jury.
 {¶ 62} VII. The trial court erred when it allowed the prosecutor to make a community interest argument over the objections of the defense.
 {¶ 63} In these assignments of error, defendant contends that he was unfairly prejudiced when the State made improper statements during closing arguments. We disagree.
 {¶ 64} The first statement at issue occurred when the prosecutor stated, at the end of her summary of evidence showing the frequency of defendant's travel between Chicago and Cleveland, [defendant]'s not a shoe salesman. (Tr. 1095). The trial court sustained the defendant's objection and later instructed the jury regarding sustained objections. (Tr. 1120). A jury is presumed to follow the instructions of the trial court. See, e.g., State v. Loza (1994), 71 Ohio St.3d 61, 79.
 {¶ 65} Next, defendant complains of the prosecutor's comment, again with regard to the frequency of defendant's trips, that this smacks of drug trafficking. (Tr. 1099). We find no error in this comment since there was evidence in the record to suggest that defendant was engaged in this kind of criminal activity at the time of her arrest.
 {¶ 66} Lastly, the prosecutor's comment on defendant bringing ten kilos of cocaine into the community was within the guidelines of UnitedStates v. Monaghan (1984), 741 F.2d 1434, because the prosecutor merely commented on the large amount of drugs being brought into Cleveland, in contrast to an argument based solely on protecting community values and civil order.
 {¶ 67} Defendant's sixth and seventh assignments of error are overruled.
 {¶ 68} VIII. The trial court erred when it gave the appellant a sentence in excess of the minimum sentence.
 {¶ 69} In this assignment of error, defendant challenges the trial court's imposition of sentence. Defendant received a ten-year sentence on each underlying count, to run concurrently, and an additional four-year sentence on the major drug offender specification for a total sentence of 14 years. Defendant contends that as a first time offender she should have been given the minimum sentence. We disagree.
 {¶ 70} Defendant was convicted of possession of cocaine exceeding 1,000 grams, in violation of R.C. 2925.11 and preparation of cocaine in an amount exceeding 1,000 grams, in violation of R.C. 2925.03. Both of these counts are felonies of the first degree with mandatory terms of incarceration of ten years imprisonment. Accordingly, the trial court did not err in imposing two ten-year sentences.
 {¶ 71} Next, we find that the trial court did not err when it imposed an additional four years under the major drug offender specification. Pursuant to R.C. 2925.11(C)(4)(f) and R.C. 2929.14(D)(3)(b), the trial court may impose an additional penalty of anywhere from one to ten additional years imprisonment upon the making of certain findings enumerated in the statute. Specifically, R.C. 2929.14 (D)(2)(b) provides in pertinent part:
 {¶ 72} (i) The terms so imposed are inadequate to punish the offender and protect the public from future crime, because the applicable factors under section 2929.12 of the Revised Code indicating a greater likelihood of recidivism outweigh the applicable factors under that section indicating a lesser likelihood of recidivism.
 {¶ 73} (ii) The terms so imposed are demeaning to the seriousness of the offense, because one or more of the factors under Section 2929.12 of the Revised Code indicating that the offender's conduct is more serious than conduct normally constituting the offense are present, and they outweigh the applicable factors under that section indicating that the offender's conduct is less serious than conduct normally constituting the offense.
 {¶ 74} Here, in support of its decision to impose an additional four years of incarceration, the trial court noted the following factors: (1) defendant was not forced, intimidated, or threatened to help co-defendant, Curtis Bridges, bring the drugs into the community; (2) defendant, although not the primary party, had a significant role in the introduction of the drugs into the community; (3) the large amount of the cocaine confiscated with a street value of over one million dollars; and (4) the serious harm and corruption suffered by the community as a result of drug offenses.
 {¶ 75} The trial court then made the requisite findings. The trial judge stated that this was the worst form of the offense due to the amount of cocaine. (Tr. 1238). The court also stated that a shorter term would demean the seriousness of the defendant's conduct and not adequately protect the public. Accordingly, the trial court did not err in imposing an additional four-year sentence.
 {¶ 76} Defendant's eighth assignment of error is overruled.
 {¶ 77} IX. The trial court erred when it failed to give the defense's submission of a mere presence instruction to the jury.
 {¶ 78} In her ninth assignment of error, defendant argues that the trial court erred by failing to give her proferred jury instruction regarding mere presence. We disagree.
 {¶ 79} As a general rule, a court does not need to give a special instruction when those portions of the instruction which are correct are satisfactorily contained in the general charge. 15A Ohio Jurisprudence 2d 552, Criminal Practice and Procedure, Section 461; State v. Randazzo (May 9, 2002), Cuyahoga App. No. 79667.
 {¶ 80} Here, the portions of the special charge requested by defendant concerning mere presence were sufficiently set forth at page 1129, et seq. of the record where the court stated the following:
 {¶ 81} Possess or possession means having control over a substance, but may not be inferred solely from mere access to the substance through ownership or occupation of the vehicle in which the substance is found.[3]
 {¶ 82} * * *
 {¶ 83} * * * Possession may not be inferred from mere access to the thing.[4] * * *
 {¶ 84} * * *
 {¶ 85} * * * the mere fact that the substance is located within the vehicle under one's control does not, of itself, constitute constructive possession. It must also be shown that the person was conscious of the presence of the substance in said vehicle.[5]
 {¶ 86} Mere presence at the scene of a crime, standing alone, by itself, is not sufficient to establish guilt.[6]
 {¶ 87} These instructions sufficiently set forth the definition which a juror should apply in considering whether defendant was a participant in the crime or merely a presence.
 {¶ 88} Defendant's ninth assignment of error is overruled.
 {¶ 89} X. The trial court erred when it denied the appellant's motion to return monies illegally seized, and granted the State's forfeiture motion.
 {¶ 90} In her tenth assignment of error, defendant argues that the trial court erred in finding that the $3,500 in currency was used or was intended to be used to commit a felony drug abuse offense. We disagree.
 {¶ 91} At the time of her arrest, the North Olmsted Police Department confiscated defendant's purse containing $3,500 in currency. Cuyahoga County later filed a petition for forfeiture of the money, alleging that it was contraband subject to forfeiture due to its connection with drug activity. Defendant moved the trial court to order the return of the seized property.
 {¶ 92} On August 24, 2001, the trial court held an evidentiary hearing on the forfeiture motion. The State presented evidence that the currency was rubber banded into four separate packets — three separate rubber banded packets of $1,000 and one rubber banded packet of $500 — and found in defendant's purse. The State also presented evidence of defendant's gross income[7], her bank account statements, and her combined bills. Defendant testified on her own behalf and offered the following legitimate reason for why she had $3,500 in her purse: she received a $4,000 tax refund check and a bonus check of $2,700. Defendant did not provide any documentation to support these claims. The trial court found, pursuant to R.C. 2925.43(A)(2), that the currency had been used or was intended to be used to commit or facilitate a felony drug abuse offense. Consequently, the court ordered that the currency be forfeited.
 {¶ 93} In a forfeiture proceeding, the State bears the burden of proving that the seized property is contraband by a preponderance of the evidence. R.C. 2933.43(C); State v. Roberts (1995), 102 Ohio App.3d 514. To prove that money is contraband and therefore subject to forfeiture, the State must demonstrate that it is more probable than not, from all of these circumstances, that the defendant used the money in the commission of a criminal offense. State v. Golston (1990), 66 Ohio App.3d 423, 431.
 {¶ 94} We find that it was reasonable to conclude that the $3,500 was associated with drug activity. Ten kilos of cocaine with a street value of over $1,000,000 was found in the trunk of the car. Defendant had numerous airline ticket stubs tending to show a pattern of drug trafficking. Defendant was unemployed at the time of her arrest. The money was bundled together in amounts of $1,000 and $500. There was a sufficient showing that the cash was used in the commission of drug trafficking, and therefore, the trial court correctly determined that it was contraband subject to forfeiture.
 {¶ 95} Defendant's tenth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and FRANK D. CELEBREZZE, JR., J., CONCUR.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. 112, Section 2(A)(1).
[1] Co-defendant Curtis Bridges pled guilty the indictment.
[2] With the exception of an auto repair bill found on the floor of the impounded vehicle.
[3] Tr. 1129.
[4] Tr. 1130.
[5] Tr. 1130.
[6] Tr. 1135.
[7] Defendant grossed $9,783 from June 27, 2000 through November 28, 2000, when she left her job.